UNITED STATES of America, Plaintiff-Appellee,

v.

DEXTER CORPORATION and North Shore Sanitary District.

North Shore Sanitary District, Defendant-Appellant.

No. 74–1135.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1974.

Decided Dec. 16, 1974.

Rehearing Denied Feb. 4, 1975.

George B. Collins, Chicago, Ill., Murray R. Conzelman, Waukegan, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Gary L. Starkman and James B. Burns, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before HASTIE * and CASTLE, Senior Circuit Judges, and FAIRCHILD, Circuit Judge.

HASTIE, Senior Circuit Judge.

In this case an information charged that Dexter Corporation, a manufacturer, and appellant North Shore Sanitary District, a municipal corporation, "did cause . . . to be discharged and deposited from out of The Dexter Corporation's Midland Division plant facility and . . . The North Shore Sanitary District sewer system, refuse matter, to wit: phenolic resin, into Lake Michigan . . .; in violation of Title 33, United States Code, Sections 407 and 411".

Section 407, originally Section 13 of the Rivers and Harbors Act of 1899, declares that "[i]t shall not be lawful to . . . cause . . . to be . . discharged, or deposited either from . . . the shore, wharf, manufacturing establishment, or mill of any kind, any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water . . .." Section 411

* Senior United States Circuit Judge William H. Hastie of the United States Court of Appeals for the Third Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

makes a violation of Section 407 a misdemeanor.

Dexter Corporation pleaded *nolo contendere,* was fined $500 and is not before us now. North Shore Sanitary District went to trial before the district court, sitting without a jury. The essential facts were stipulated.

North Shore Sanitary District is a municipal corporation of the State of Illinois and, as duly authorized, operates a sanitary sewer system in Lake County. Dexter Corporation's manufacturing plant connects with and utilizes this municipal system for the discharge of waste and storm water.

In its manufacturing operation Dexter uses phenolic resin, a toxic and to some extent corrosive liquid that is lighter than water. During a rainstorm, an employee at the Dexter plant accidentally caused a substantial quantity of phenolic resin to be discharged into the sanitary sewer system where its subsequent course was diverted through a by-pass, which the Sanitary District used at times of heavy rainfall, and thence into Lake Michigan. Under normal conditions the Sanitary District's processing of sewerage would have prevented the phenolic resin from reaching the lake. But in this case the rainy weather by-pass had been opened and the toxic liquid flowed untreated from the sewer into the lake. There, being lighter than water, it was discovered on the surface.

On these facts the district court found the Sanitary District guilty of violating Section 407 and imposed a $500 fine. This appeal followed.

We now consider whether the exception stated in Section 407 makes the section's general prohibitory language inapplicable here. Certainly, the phenolic resin in this case comes within the comprehensive statutory designation of "any refuse matter of any kind or description whatever" discharged from a "manufacturing establishment".[1] But the statute

1. *Cf.* United States v. Standard Oil Co., 1966, 384 U.S. 224, 86 S.Ct. 1427, 16 L.Ed.2d 492; United States v. Esso Standard Oil Co. of Puerto Rico, 3 Cir. 1967, 375 F.2d 621.

proceeds to exclude from its coverage refuse matter "flowing from streets and sewers and passing therefrom in a liquid state". On its face this exclusionary language seems applicable to the effluent in this case. The parties have stipulated and the government concedes that the Sanitary District caused the refuse in question to pass through its sewers into the lake and that the refuse was at all times a liquid.

There was a rational basis for this explicit exception in the circumstances of the statute's enactment. Concern to eliminate immediate and potential hazards to navigation moved Congress to enact late Nineteenth Century legislation that culminated in the Rivers and Harbors Act of 1899.[2] Thus, though Section 13 of the 1899 Act has also served in more recent times to provide some protection for the quality of bodies of water,[3] its essential design was to safeguard their navigability. In this historic context, the statutory exception that governs this case is understandable. Although the statutory prohibition of the deposit or discharge of refuse into streams covered liquids as well as solids, an influx of liquid, free of solids in suspension, posed no significant immediate or potential hazard to navigability. At the same time local communities were progressively developing sanitary and storm sewerage systems and regulating their effluent.[4] It is not surprising, therefore, that Congress in 1899 should see fit to leave the treatment and disposition of all liquid waste handled by local public sewerage systems to local regulation, exercising federal control thereover only to the extent necessary to prevent public sewers from becoming conduits for solids that might accumulate in and eventually impair the navigability of adjacent waters. In any event, the language of the statutory exception is clear and unambiguous.

At argument, the appellee predicated a contrary interpretation of the controlling statutory language upon United States v. Republic Steel Corp., 1960, 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903. However, that case involved only "industrial solids" and held that such matter, discharged through a sewerage system in the form of particles suspended in water, is not within the Section 407 exception. It is true that, in this context, the opinion of the Court spoke of two categories of "articles in suspension", namely, "organic matter in sewage"[5] and "industrial solids". The significance of these categories is not clear, particularly since no such breakdown is undertaken in the statute. In any event, the case was concerned only with industrial solids and decided merely that under Section 407 such solids in suspension were not refuse in a liquid state.

Subsequently, a few courts, incorrectly we think, have relied on United States v. Republic Steel Corp., as authority for making the Section 407 exception inapplicable to liquid waste of industrial origin that is passed through public sewers.[6] But the *Republic Steel* holding does not require and rational reading of the simple language of Section 407 does not permit that interpretation. In a single sentence the statute prohibits the deposit or discharge in navigable water of "refuse matter of any kind or description

---

**2.** See S.Rep. No. 224, 50th Cong., 1st Sess., 2 (1888); H.R.Rep. No. 1826, 55th Cong., 3d Sess., 3–4 (1899). The history of the 1899 Act is sketched in United States v. Pennsylvania Industrial Chemical Corp., 1973, 411 U.S. 655, 663–666, 93 S.Ct. 1804, 36 L.Ed.2d 567.

**3.** See cases cited in note 1, *supra.*
    Supplementing the earlier legislation Congress has more recently inaugurated an elaborate program of pollution control. 33 U.S.C. c. 23, entitled Pollution Control of Navigable Waters.

**4.** See Rodgers, Jr., Industrial Water Pollution and the Refuse Act, 1971, 119 U.Pa.L.Rev. 761, 778.

**5.** The opinion writer, Mr. Justice Douglas, seems to have used "sewage", a word that does not appear in the statute, to mean human or other domestic waste.

**6.** *E. g.,* United States v. Granite State Packing Co., D.N.H.1972, 343 F.Supp. 57, 61.

whatever", except for "that flowing from . . . sewers . . . in a liquid state". The quoted pronoun "that", must refer to the subject phrase, "refuse matter of any kind". Thus, the exception is not limited to refuse of domestic origin.[7] We will not substitute for what the statute says our notions of what might preferably have been said.

The judgment is reversed.

Reversed.

---

7. This seems to have been the contemporary reading of the statute by Attorney General, later Associate Justice, Joseph McKenna. 1897, 21 Op.Atty.Gen. 594, 595.