CITY OF EVANSVILLE, INDIANA, et al., Plaintiff-Appellants,

v.

KENTUCKY LIQUID RECYCLING, INC., et al., Defendant-Appellees.

No. 78–1578.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 24, 1978.

Decided Aug. 9, 1979.

---

Lockyear, Barber & Kornblum, Theodore Lockyear, Steve Barber and James A. Kornblum, John C. Cox, Evansville, Ind., for plaintiff-appellants.

Fred S. White, Evansville, Ind., Edward M. Steutermann, Louisville, Ky., for defendant-appellees.

Before SPRECHER, TONE and BAUER, Circuit Judges.

TONE, Circuit Judge.

Three Indiana municipal corporations that use water from the Ohio River bring this action to recover damages incurred because of defendants' discharges of contaminants into the river from Kentucky. The most important question on this appeal is whether plaintiffs have stated a claim over which the district court had jurisdiction. We hold that a claim is stated under the federal common law of nuisance and that the court had jurisdiction pursuant to 28 U.S.C. § 1331.

Plaintiffs are Evansville, Indiana, the water works department of that city, and Mount Vernon, Indiana. Defendants are Kentucky Liquid Recycling, Inc., three of its employees, and Louisville and Jefferson County Metropolitan Sewage District. Plaintiffs allege that Kentucky Liquid Re-

cycling discharged toxic chemicals into the sewer system of the sewer district, and that the sewer district in turn discharged these chemicals into the Ohio River, from which plaintiffs draw water into their treatment plants. As a result of these discharges, it is alleged, plaintiffs incurred unusual treatment expense and other expenses, which they seek to recover as damages. They also seek punitive damages. Plaintiffs seek to represent a class of similarly situated municipalities and water treatment facilities, for whom similar relief is asked.

Although inartfully stated, several theories of federal jurisdiction are discernible from the amended complaint: (1) jurisdiction under 28 U.S.C. § 1331 over implied rights of action under (a) § 13 of the Rivers and Harbors Act, 33 U.S.C. § 407, (b) the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1251, *et seq.*, and (c) the Safe Drinking Water Act, 42 U.S.C. § 300f, *et seq.*; (2) jurisdiction under the citizen suit provisions of the latter two statutes; and (3) jurisdiction under 28 U.S.C. § 1331 over a right of action under the federal common law of nuisance. Plaintiffs also assert state law claims, which, diversity of citizenship being lacking, must rest on pendent jurisdiction.[1]

In dismissing the amended complaint for lack of subject matter jurisdiction,[2] the district court held that violation of § 13 of the Rivers and Harbors Act did not give rise to a private right of action. The possibility of implying a right of action under the other two Acts was not discussed; and, viewing the notice requirements for citizen suits to enforce the requirements of the other two Acts as jurisdictional prerequisites, the court found jurisdiction lacking because of plaintiffs' admitted failure to comply with these requirements. The court rejected plaintiffs' contention that the savings clause of either statute in combination with 28 U.S.C. § 1331 provided an adequate basis

1. Allegations of admiralty jurisdiction appearing in the complaint are not now relied on.

2. The court did not rule on the alternative grounds for dismissal asserted in the sewer

district's motion to dismiss, lack of jurisdiction over the person and improper venue. *See* Rule 12(b)(2) and (3), Fed.R.Civ.P.

for federal court jurisdiction. In addition, the court held that because plaintiffs were not states, jurisdiction could not be sustained under 28 U.S.C. § 1331 and the federal common law of nuisance. Having concluded that it had no jurisdiction over the federal claims, the court dismissed the pendent state law claims.

## I.

### Rivers and Harbors Act

We agree with the district court that a private right of action should not be inferred under § 13 of the Rivers and Harbors Act,[3] which does not expressly create one.[4]

The Supreme Court has recently made it clear that, when Congress does not expressly create a private cause of action, an intent to do so is not lightly to be inferred. *Touche Ross & Co. v. Redington,* —— U.S. ——, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Shiffrin v. Bratton,* —— U.S. ——, 99 S.Ct. 3094, 61 L.Ed.2d 871 (1979) (vacating and remanding for further consideration in light of *Touche Ross*); *see Cannon v. University of Chicago,* —— U.S. ——, 99 S.Ct. 1946, 1967–1968, 60 L.Ed.2d 560 (majority opinion), 1968 (Rehnquist, J., concurring), 1985 (Powell, J., dissenting) (1979); *Chrysler Corp. v. Brown,* 441 U.S. 281, 316, 99 S.Ct. 1705, 1725, 60 L.Ed.2d 208 (1979). Referring to the four factors stated in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Court in *Touche Ross* explained that although each is "relevant,"

they are not necessarily entitled to equal weight, and, moreover,

> [t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action. Indeed, the first three factors discussed in *Cort*—the language and focus of the statute, its legislative history, and its purpose, see 422 U.S., at 78, 95 S.Ct., at 2088—are ones traditionally relied upon in determining legislative intent.

—— U.S. at ——, 99 S.Ct. at 2489. The Court also said,

> To the extent our analysis in today's decision differs from that of the Court in [*J. I. Case v.*] *Borak,* [377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964)], it suffices to say that in a series of cases since *Borak* we have adhered to a stricter standard for the implication of private causes of action, and we follow that stricter standard today.

*Touche Ross v. Redington, supra,* —— U.S. at ——, 99 S.Ct. at 2490 (citing *Cannon*).

Even before these recent Supreme Court decisions, the Third Circuit refused to infer a private right of action from sections of the Rivers and Harbors Act that are analogous for present purposes,[5] and district courts reached the same conclusion with respect to § 13.[6]

The first factor listed in *Cort v. Ash* is whether the plaintiff is

---

**3.** 33 U.S.C. § 407:

It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited . . . from the shore, wharf, manufacturing establishment or mill of any kind, any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States, or into any tributary of any navigable water from which the same shall float or be washed into such navigable water; . . . .

**4.** Whether plaintiffs have an implied cause of action under the statute is not a question of jurisdiction. *Burks v. Lasker,* —— U.S. ——, —— & n.5, 99 S.Ct. 1831, 1836 & n.5, 60 L.Ed.2d 404 (1979). Therefore, if the implied

right of action under discussion had been the only right asserted, the complaint should have been dismissed for failure to state a claim on which relief could be granted. Rule 12(b)(6), Fed.R.Civ.P.

**5.** *Red Star Towing and Transportation Co. v. Department of Transportation of the State of New Jersey,* 423 F.2d 104, 105 & n.3 (3d Cir. 1970).

**6.** *E. g., Township of Long Beach v. City of New York,* 445 F.Supp. 1203, 1211–1212 (D.N.J. 1978); *Parsell v. Shell Oil Co.,* 421 F.Supp. 1275, 1277–1280 (D.Conn.1976), *aff'd sub nom. East End Yacht Club, Inc. v. Shell Oil Co.,* 573 F.2d 1289 (2d Cir. 1977).

"one of the class for whose *especial* benefit the statute was enacted," *Texas & Pacific R. Co. v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff?

422 U.S. at 78, 95 S.Ct. at 2088. Referring to this factor in *Cannon,* the majority said,

the Court has been especially reluctant to imply causes of actions under statutes that create duties on the part of persons for the benefit of the public at large.

—— U.S. at ——, 99 S.Ct. at 1954–1955 n.13; *see also Touche Ross v. Redington, supra,* —— U.S. at ——, 99 S.Ct. 2479. The duties created by the provision relied on by plaintiffs in this case are for the benefit of the public at large.[7]

As for the second *Cort v. Ash* factor, neither party cites any legislative history that might shed light on Congress' intent.[8]

The third factor, the consistency of a private right of action with "the underlying purposes of the legislative scheme," *Cort v. Ash, supra,* 422 U.S. at 78, 95 S.Ct. at 2088, is not helpful to plaintiffs here. Section 17 of the Act, 33 U.S.C. § 413, expressly delegates enforcement of the provisions of § 13 to the Department of Justice; and § 16 of the Act, 33 U.S.C. § 411, authorizes the district courts to award one-half of any criminal fines imposed on violators of § 13 to "persons giving information which shall lead to conviction."[9] While a private right of action would not be inconsistent with either of these provisions, both suggest that Congress intended to leave primary enforcement of the provision of the Act to the Department of Justice. *Cf. Red Star Towing v. Department of Transportation, supra* note 5, 423 F.2d at 105 & n.3.

The fourth *Cort v. Ash* factor seems to cut both ways, for the cause of action asserted here, although perhaps "one traditionally relegated to state law," is not "in an area basically the concern of the States." 422 U.S. at 78, 95 S.Ct. at 2088.

No one factor is controlling. Here the first, and arguably, the third factors weigh against implication of a private right of action; the second and fourth are at best only neutral. The central inquiry is congressional intent, *Touche Ross v. Redington, supra,* —— U.S. at ——, 99 S.Ct. at 2479, and given the "stricter standard for the implication of private causes of action," *id.* at ——, 99 S.Ct. at 2490, established in the Supreme Court's most recent decisions in this area, we think the evidence insufficient to support the conclusion that Congress intended to create a private right of action under § 13 of the Rivers and Harbors Act.[10]

## II.

### Federal Water Pollution Control Act

Relying primarily on *Natural Resources Defense Council v. Callaway,* 524 F.2d 79 (2d Cir. 1975), plaintiffs contend that the district court erred in holding that jurisdic-

---

7. Plaintiffs' status as municipalities or a municipal agency is immaterial. For the language of the statute no more evidences an intent to "especially" benefit a class of municipalities or their agents than a class of private parties generally. Indeed, the Supreme Court has noted that "a principal beneficiary of the [Rivers and Harbors] Act, if not the principal beneficiary, is the [Federal] Government itself." *Wyandotte Transportation Co. v. United States,* 389 U.S. 191, 201, 88 S.Ct. 379, 386, 19 L.Ed.2d 407 (1967).

8. As noted in *Cannon,* "the legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question." —— U.S. at ——, 99 S.Ct. at 1956.

9. "[E]very court which has considered the question has denied to private plaintiffs the right to bring an action under the [Rivers and Harbors] Act to recover in a *qui tam* action the percentage of the fine which they might have been entitled to receive as informers if an offense had been prosecuted to conviction." *Parsell v. Shell Oil Co., supra,* 421 F.Supp. at 1279 (collecting cases, *id.* n.9).

10. We note also that the conduct of which plaintiffs complain may fall within the language of the statute excepting from its general prohibition "refuse . . . flowing from streets and sewers and passing therefrom in a liquid state, . . . ." 33 U.S.C. § 407, quoted in note 3, *supra; see United States v. Dexter Corp.,* 507 F.2d 1038 (7th Cir. 1975).

tion was lacking under the Federal Water Pollution Control Act Amendments [11] because they had failed to comply with the notice provisions of § 505.[12] More specifically, plaintiffs contend that the district court had jurisdiction of their FWPCA claims under 28 U.S.C. § 1331 by operation of the "saving clause" contained in § 505.[13]

In the cited case and an earlier case [14] the Second Circuit joined the District of Columbia Circuit, *Natural Resources Defense Council v. Train*, 166 U.S.App.D.C. 312, 318–323, 510 F.2d 692, 698–703 (1975), in holding that an action could be maintained against an administrative official despite the plaintiff's failure to comply with the FWPCA's 60-day notice requirement. We declined to follow the latter decision in *City of Highland Park v. Train*, 519 F.2d 681, 693 (7th

Cir. 1975), *cert. denied*, 424 U.S. 927, 96 S.Ct. 1141, 47 L.Ed.2d 337 (1976), a case arising under the Clean Air Amendments of 1970, 42 U.S.C. §§ 1857a, *et seq.* In any event, these three decisions of other circuits are inapplicable here. In each, the court's focus was on whether it had jurisdiction,[15] since the Administrative Procedure Act, 5 U.S.C. § 702, provided for review of final agency actions. In none of these cases did the court consider the propriety of implying an independent private right of action under the FWPCA. *Compare Chrysler v. Brown, supra,* 441 U.S. at 316, 99 S.Ct. at 1725. In the case at bar the APA is of course inapplicable; any private right of action based on the FWPCA, other than that conferred by the citizen suit provision, must be inferred from the Act itself.

---

**11.** The question is whether a right of action exists. *See* note 4, *supra*.

**12.** 33 U.S.C. § 1365:

(a) Except as provided in subsection (b) of this section, any citizen [defined in § 505(g), 33 U.S.C. § 1365(g)] may commence a civil action on his own behalf—

(1) against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or

(2) against the Administrator [of the Environmental Protection Agency] where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

The [United States] district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.

(b) No action may be commenced—

(1) under subsection (a)(1) of this section—

(A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right[,]

(2) under subsection (a)(2) of this section prior to sixty days after the plaintiff has given notice of such action to the Administrator,

except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of sections 1316 and 1317(a) of this title. Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.

**13.** "Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief . . . ." 33 U.S.C. § 1365(e).

**14.** *Conservation Society of Southern Vermont, Inc. v. Secretary of Transportation*, 508 F.2d 927, 938–939 & n.62 (2d Cir. 1974), *vacated for reconsideration in light of Aberdeen & Rockfish R. R. Co. v. SCRAP*, 422 U.S. 289, 95 S.Ct. 2336, 45 L.Ed.2d 191 (1975) (National Environmental Policy Act holding), 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975).

**15.** The view of most circuits at the time was that § 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–704, provided an independent jurisdictional basis for judicial review of final agency action. The Supreme Court held otherwise in *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

█ Plaintiffs' failure to comply with the notice requirement precludes reliance on § 505(a) as a basis for the action. *E. g., Commonwealth of Massachusetts v. United States Veterans Administration*, 541 F.2d 119, 121 (1st Cir. 1976). Furthermore, even if the requisite notice had been given, § 505(a) would not have authorized plaintiffs' claim. That provision authorizes a civil action against a party "alleged to be in violation" of effluent standards or limitations prescribed under the Act or. an order of the Administrator or a state with responsibility under the Act. It does not provide for suits against parties alleged to have violated an effluent standard or limitation in the past or for recovery of damages. The legislative history of the provision leaves little doubt that neither class actions nor actions for damages were contemplated. The Senate Report states as follows:

> Section 505 does not authorize a "class action." Instead, it would authorize a private action by any citizen or citizens acting on their own behalf. Questions with respect to traditional "class" actions often involve: (1) identifying a group of people whose interests have been damaged; (2) identifying the amount of total damage to determine jurisdiction qualification; and (3) allocating any damages recovered. None of these is appropriate in citizen suits seeking abatement of violations of water pollution control requirements. It should be noted, however, that the section would specifically preserve any rights or remedies under any other law. Thus, if damages could be shown, other remedies would remain available. Compliance with requirements under this Act would not be a defense to a common law action for pollution damages.[16]

Thus, unless plaintiffs can establish some other basis for this claim, the district court properly dismissed it.

█ Failure to comply with the notice provisions of § 505(b) does not foreclose any other right to relief a plaintiff might have. The saving clause, § 505(e), 33 U.S.C. § 1365(e), expressly preserves any such rights. *Cf. City of Highland Park v. Train, supra*, 519 F.2d at 691–693; *see also Illinois v. Milwaukee*, 599 F.2d 151 (7th Cir. 1979) (holding that the Federal Water Pollution Control Act does not preclude a federal common law action under 28 U.S.C. § 1331). The saving clause preserves rights "under any statute or common law" but does not itself create any right. Assuming that the Act itself is within the term "any statute" (*but see* note 20 and accompanying text, *infra*), still no right exists under the Act unless it can be inferred, because none is expressed.

We therefore turn again to the standards discussed in Part I, above, to determine whether such a right should be inferred. Recognizing that "[t]he most accurate indicator of the propriety of implication of a cause of action" is the language of the statute, *Cannon v. University of Chicago, supra*, —— U.S. at ——, 99 S.Ct. at 1954–1955 n.13, we shall again proceed through the still relevant *Cort v. Ash* factors.

Plaintiffs cite no particular provision of the Act as supporting their claim for relief, but presumably they rely on § 301, 33 U.S.C. § 1311, which proscribes the discharge of any pollutant except in compli-

---

16. S.Rep.No.92–414, 92d Cong., 1st Sess. 81, *reprinted in* [1972] U.S.Code Cong. & Admin. News, pp. 3668, 3746–3747; *see also* H.R.Rep. No.92–911, 92d Cong., 2d Sess. 133, *reprinted in* 1 A *Legislative History of the Water Pollution Control Act Amendments of 1972* 753, 820 (1973) (noting that although the courts would be authorized to impose civil fines under § 309(d), 33 U.S.C. § 1319(d), "[t]he penalties imposed would be deposited as miscellaneous receipts in the treasury and not be recovered by the citizen bringing the suit"). With one exception significant here, § 505 as adopted "is the same as the comparable provision of the Senate Bill [S.2770] and the House Amendment [H.R.11896] . . . ." S.Rep.No.92–1236, 92d Cong., 2d Sess. 145 (Conference Report), *reprinted in* [1972] U.S.Code Cong. & Admin. News, pp. 3776, 3823. In both the Senate bill and the House bill, § 505 contained numerous exceptions to the 60-day waiting period required after notice. In the bill as adopted all of these exceptions but two were eliminated. *Ibid.*

ance with the provisions of the Act.[17] Neither that section nor any other section of the Act contains any suggestion that Congress intended to confer a benefit or right on any particular segment of the public.

Moreover, it is significant that the Act contains a section specifically addressed to private rights of action, § 505, which not only provides for citizen suits but also contains, in subsection (e), a saving clause providing that nothing in the section is to affect any right "under any statute or common law." Congress having thus specifically addressed the subject of private remedies, it is reasonable to assume that it said all that it intended on that subject. *Cf. Touche Ross v. Redington, supra,* —— U.S. at ——, 99 S.Ct. 2479.

Section 505 evidences a congressional intent to carefully channel public participation in the enforcement of the Act.[18] Before commencing a citizen suit the plaintiff must give notice not only to the alleged violator but also to the Administrator and the state in which the violation occurs.[19] If either the Administrator or the state initiates adequate enforcement proceedings, the private action is foreclosed, although the complainant is authorized to intervene "as of right." § 505(b), 33 U.S.C. § 1365(b).

The legislative history of the Act contains no specific answer to the question of whether § 301 creates a private right of action. The reference to § 505 in the Senate Report on S.2770, quoted above, in referring, *inter alia,* to damage actions, interprets the statutory phrase "under any statute or common law" as "under any other law." Even if this was intended only as paraphrase, it suggests that a right of action for damages must be found outside the Act itself.[20] And Congress' rejection of all but two of the proposed exceptions to the requirement of a 60-day waiting period for a citizen suit, *see* note 16, *supra,* reinforces the evidence in § 505 itself of an intent to circumscribe private rights of action under the FWPCA.

What we have said about § 505 is also applicable with respect to the third factor identified in *Cort v. Ash,* namely, "is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?" 422 U.S. at 78, 95 S.Ct. at 2086. Section 505 expresses Congress' judgment as to the kind and extent of private enforcement of the FWPCA. In a private suit under § 505(a) a court, at the behest of a private plaintiff, may enforce compliance with effluent standards and limitations, require the Administrator to per-

---

**17.** For a discussion of the provisions of the Act see *Illinois v. Milwaukee,* 599 F.2d 151 (7th Cir. 1979).

**18.** *See also* § 101(e), 33 U.S.C. § 1251(e): "Public participation in the development, revision, and enforcement of any regulation, standard, effluent limitation, plan or program established by the Administrator or any State under this chapter shall be provided for, encouraged, and assisted by the Administrator and the States. The Administrator, in cooperation with the States, shall develop and publish regulations specifying minimum guidelines for public participation in such processes." *See generally Citizens for a Better Environment v. EPA,* 596 F.2d 720 (7th Cir. 1979); S.Rep.No.92–1236, 92d Cong., 2d Sess. 100 (Conference Report), *reprinted in* [1972] U.S.Code Cong. & Admin. News, pp. 3776, 3777; S.Rep.No.92–414, 92d Cong., 1st Sess., 12, 79–82, *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 3668, 3679, 3745–3747; H.Rep.No.92–911, 92d Cong., 2d Sess. 79, 132, *reprinted in* 1 *A Legislative History of the Water Pollution Control Act Amendments of 1972* 753, 766, 819–821 (1973).

**19.** *See, e. g.,* S.Rep.No.92–414, 92d Cong., 1st Sess. 79–80, *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 3668, 3745: "In order to further encourage and provide for agency enforcement the Committee has added a requirement that prior to filing a petition with a court, a citizen or group of citizens would first have to serve a notice of intent to file such action on the Federal and State Water Pollution Control Agency and the alleged polluter."

**20.** This language in the Senate Report might also have been intended to state what was meant by the phrase "any statute or common law" rather than as a mere paraphrase. Thus, § 505(e) would preclude the inference of any congressional intent to create a private right of action for damages under other provisions of the FWPCA. Nevertheless, for purposes of analyzing the *Cort v. Ash* factors we assume that the statement is only a paraphrase of the statutory language.

form a duty to act, and impose civil penalties under § 309(d), 33 U.S.C. § 1319(d). Implication of a private remedy for damages under § 301 would be inconsistent with the congressional purpose implicit in the Act of encouraging private participation in the enforcement of the Act within the channels expressly provided. *Cf. Touche Ross v. Redington, supra,* —— U.S. at —— – ——, 99 S.Ct. 2479; *National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 457–458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974); *T. I. M. E., Inc. v. United States,* 359 U.S. 464, 470–471, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959).

■ The enforcement scheme is adequate without an inferred private right of action. The Administrator of the EPA is given broad authority to enforce the provisions of the Act; states assuming discharge permit authority are required to demonstrate adequate state law authority to insure compliance. If a state fails to enforce the Act, the Administrator may do so, and, in the case of repeated failures to enforce the Act, the Administrator may resume direct authority for issuance of permits in that state. These enforcement procedures are reinforced by the citizen suit provisions of § 505, which also authorizes the award of attorney's fees and litigation costs to citizen plaintiffs.

■ We conclude that plaintiffs have not carried their burden of establishing that Congress intended to create a private right of action for damages against a violator of the FWPCA in favor of a person injured by pollutant discharges.

■ The amended complaint does not state a claim under the FWPCA on which relief could be granted.

### III.

### *Safe Drinking Water Act*

Plaintiffs recognize in their brief that their assertion of a right of action under the Safe Drinking Water Act is subject to the same analysis as their claim to a right of action under FWPCA.[21]

■ We do not, however, even find it necessary to apply that analysis, because defendants' alleged conduct does not even arguably violate the Safe Drinking Water Act. That Act authorizes the Administrator of the EPA to prescribe maximum contaminant levels in drinking water and specific treatment techniques to reduce the level of contaminants in drinking water.[22] With an exception not relevant here,[23] the Act does not purport to regulate discharges of pollutants. It focuses on "public water systems," *see, e. g.,* 42 U.S.C. § 300g,[24] and attempts to insure that such systems provide drinking water that meets minimal safety standards. *See generally* H.R.Rep. No.93–1185, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 6454, 6456–6462.[25] Plaintiffs point to no provision of the Act within which defendants' conduct even arguably falls; we have found none. If this were the only basis asserted for a federal cause of action subject to the district court's jurisdiction, plaintiffs' claim would be "wholly insubstantial and frivolous" and therefore within the narrow category of claims that should be dis-

---

21. The Safe Drinking Water Act, 42 U.S.C. § 300f, *et seq.,* contains, in 42 U.S.C. § 300j–8, a *notice provision comparable to that of* § 505 of the FWPCA.

22. *See* 42 U.S.C. § 300g–1. For an overview of the statutory scheme, see *Environmental Defense Fund v. Costle,* 188 U.S.App.D.C. 95, 97–98, 100–102, 578 F.2d 337, 339–340, 342–344 (1978) (Leventhal, J.).

23. *See* 42 U.S.C. § 300h (underground injection of contaminants that may endanger drinking water supplies).

24. Public water system is defined as follows:

[A] system for the provision to the public of piped water for human consumption, if such system has at least fifteen service connections or regularly serves at least twenty-five individuals.

42 U.S.C. § 300f(4).

25. "The purpose of the legislation is to assure that water supply systems serving the public meet minimum national standards for protection of public health." H.R.Rep.No.93–1185, *supra, reprinted in* [1974] U.S.Code Cong. & Admin.News, *supra,* at 6454.

missed for lack of federal jurisdiction. *Hagans v. Lavine,* 415 U.S. 528, 536–543, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Bell v. Hood,* 327 U.S. 678, 682–683, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

## IV.

### *Federal Common Law*

Plaintiffs' assertion of a right of action under the federal common law of nuisance and federal jurisdiction over such a claim under 28 U.S.C. § 1331,[26] is well founded.

Defendants argue that, as the district court held, under *Illinois v. Milwaukee,* 406 U.S. 91, 100, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972), only a state may file such an action. Plaintiffs do not seek to represent the "quasi-sovereign interest," *Georgia v. Tennessee Copper Co.,* 206 U.S. 230, 237, 27 S.Ct. 618, 51 L.Ed. 1038 (1907), or the "ecological rights," *Texas v. Pankey,* 441 F.2d 236, 240 (10th Cir. 1971), of the State of Indiana. Because they are not states, they cannot represent the interests of any other state, *see* Rule 23(a)(3), Fed.R.Civ.P., and they do not seek to do so. They seek only to recover for themselves and other similarly situated municipal bodies damages for expenses they incurred because of defendants' discharges of toxic chemicals into drinking water supplies.

Since it was the Supreme Court's opinion in *Illinois v. Milwaukee* that firmly established the existence of a federal common law of nuisance governing interstate water pollution, we take that opinion as our text in determining the content and scope of that law. *See also Texas v. Pankey, supra,* 441 F.2d at 239–242. The Court did not address itself in *Illinois v. Milwaukee* to the question of whether parties other than states were protected by, or could invoke, that law, since the only plaintiff in that case was a state. The Court's opinion does, however, provide guidance for resolution of the question before us.[27]

The Court held that "laws" in 28 U.S.C. § 1331(a) includes federal common law as well as statutory law, 406 U.S. at 100, 92 S.Ct. 1385, and declared that there is a federal common law of nuisance applicable to interstate water pollution. *Id.* at 103, 92 S.Ct. 1385. Referring to the problem of water apportionment, the Court said

> Rights in interstate streams, like questions of boundaries, "have been recognized as presenting federal questions." *Hinderlider v. LaPlata Co.,* 304 U.S. 92, 110, 58 S.Ct. 803, 811, 82 L.Ed. 1202 [(1938)]. The question of apportionment of interstate waters is a question of "federal common law" upon which state statutes or decisions are not conclusive.

406 U.S. at 105, 92 S.Ct. at 1393–94 (footnote omitted).[28] The Court's footnote 6 is particularly suggestive of the correct resolution of the issue in the case at bar:

> Thus, it is not only the character of the parties that requires us to apply federal law. . . . As Mr. Justice Harlan indicated for the Court in *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 421–427, 84 S.Ct. 923, 936–40, 11 L.Ed.2d 804 [(1964)], where there is an overriding federal interest in the need for a uniform

**26.** "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000 . . ., and arises under the . . ., laws, . . . of the United States." 28 U.S.C. § 1331(a).

**27.** *Compare* P. Bator, P. Mishkin, D. Shapiro, and H. Wechsler, Hart & Wechsler's *The Federal Courts and the Federal System,* 806 (2d ed. 1973) ("Justice Douglas' opinion [in *Illinois v. Milwaukee,* 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972)] casts no light on the question whether federal common law governs suits to abate interstate pollution brought by private parties") *with* Note, Federal Common Law and

Interstate Pollution, 85 Harv.L.Rev. 1439, 1439 (1972) ("The holding in that case [*Illinois v. Milwaukee*] goes farther than the holding in the [*Texas v.*] *Pankey* [441 F.2d 236 (10th Cir. 1971)] case . . . largely because the . . . Court indicated that federal common lawmaking power should be exercised in any interstate nuisance suit, regardless of the character of the parties; . . .").

**28.** In *Hinderlider,* the plaintiff was not a state but a ditch company complaining of Colorado's interference with its rights to draw water from the LaPlata River. Colorado defended on the ground that its action was authorized by an interstate compact approved by Congress.

rule of decision or where the controversy touches basic interests of federalism, we have fashioned federal common law. . . Certainly these same demands for applying federal law are present in the pollution of a body of water such as Lake Michigan bounded, as it is, by four States.

*Id.* at 105, 92 S.Ct. at 1393–1394 (citations omitted).

 Whatever the result should be when the plaintiff is a private party or when no interstate effects are alleged,[29] there can be little doubt that the reasons the Supreme Court found compelling for declaring a federal common law of interstate water pollution are applicable here. The plaintiffs are municipal or public corporations, subdivisions of the state, that were required to spend public funds because of pollution of an interstate waterway by acts done in another state. The interests of the state in this interstate pollution dispute are implicated in the same way such interests were implicated in *Illinois v. Milwaukee.*[30]

The sewer district asserts that a passage from *New Jersey v. New York,* 345 U.S. 369, 73 S.Ct. 689, 97 L.Ed. 1081 (1953), quoted in *Illinois v. Milwaukee, supra,* 406 U.S. at 96–97, 92 S.Ct. at 1389, supports the view that only a state may maintain a suit based on the federal common law. The portion of the passage relied on is as follows:

The City of Philadelphia represents only a part of the citizens of Pennsylvania who reside in the watershed area of the Delaware River and its tributaries and depend upon those waters. If we undertook to evaluate all the separate interests within Pennsylvania, we could, in effect, be drawn into an intramural dispute over the distribution of water within the Commonwealth.

As the rest of the passage quoted in *Illinois v. Milwaukee, supra,* 406 U.S. at 97, 92 S.Ct. at 1389, demonstrates, the language will not bear the construction asserted by the sewer district:

Our original jurisdiction should not be thus expanded to the dimensions of ordinary class actions. An intervenor whose state is already a party should have the burden of showing some compelling interest in his own right, apart from his interest in a class with all other citizens and creatures of the state, which interest is not properly represented by the state.

The issue in *New Jersey v. New York* was whether Philadelphia should be permitted to intervene in an original action in the Supreme Court in which Pennsylvania was already a party. What the Court said in addressing that issue has no bearing on whether a party other than a state can maintain a federal common law nuisance action in a district court.

**29.** In *Committee for Jones Falls Sewage System v. Train,* 539 F.2d 1006 (4th Cir. 1976) (en banc), a divided court refused to extend *Illinois v. Milwaukee* to an action brought by an association of community organizations and citizens in which there was no interstate effect. Even though state plaintiffs were present in *Reserve Mining Co. v. EPA,* 514 F.2d 492, 520, 521 (8th Cir. 1975) (en banc), the court held *Illinois v. Milwaukee* inapplicable because no interstate effects were alleged. *See also Parsell v. Shell Oil Co.,* 421 F.Supp. 1275, 1281 (D.Conn.1976), *aff'd sub nom. East End Yacht Club v. Shell Oil Co.,* 573 F.2d 1289 (2d Cir. 1977). *But see Stream Pollution Control Board v. United States Steel Corp.,* 512 F.2d 1036, 1039–1040 & n.9 (7th Cir. 1975); *Ira S. Bushey & Sons v. United States,* 346 F.Supp. 145 (D.Vt. 1972), *aff'd,* 487 F.2d 1393 (2d Cir. 1973), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3182, 41 L.Ed.2d 1146 (1974).

**30.** *Cf. Hinderlider v. LaPlata River & Cherry Creek D. Co.,* 304 U.S. 92, 110, 58 S.Ct. 803, 82

L.Ed. 1202 (1938) (interstate water apportionment); *see also Georgia v. Tennessee Copper Co.,* 206 U.S. 230, 238, 27 S.Ct. 618, 51 L.Ed. 1038 (1907) (implicitly assuming that even a private party might file suit to enjoin interstate air pollution); *Committee for Jones Falls Sewage System v. Train, supra,* 539 F.2d at 1009 n.8. Originating in Pennsylvania, the Ohio River is the boundary between Ohio and West Virginia, Ohio and Kentucky, Indiana and Kentucky, and Illinois and Kentucky, and empties into the Mississippi River. Each of these states has an interest in the use of the river, but the laws of one state cannot control the use of the river by citizens of other states. *See Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 427, 84 S.Ct. 923, 939, 11 L.Ed.2d 804 (1964) (*Hinderlider* "implies that no State can undermine the federal interest in equitably apportioned interstate waters even if it deals with private parties").

So far there is little authority on the question we decide. At least one district court has held that a municipality can state a claim for relief under the federal common law of interstate water pollution. *Township of Long Beach v. City of New York,* 445 F.Supp. 1203, 1214 (D.N.J.1978). Both the Second and Third Circuits have indicated that the United States can state a claim for relief under the federal common law.[31]

■ Defendants also contend that plaintiffs' request for damages rather than injunctive relief somehow precludes the district court's exercise of jurisdiction. None of the defendants cites any authority for that proposition, and we have discovered none.[32] We have held that plaintiffs are appropriate parties to maintain the cause of action asserted. The question of what relief, if any, they may be entitled to is independent of the court's power to hear and decide the merits of the claim. *See Davis v. Passman,* —— U.S. ——, ——, 99 S.Ct. 2264, 2274 n.18, 60 L.Ed.2d 846 (1979).[33]

Whether or not defendants have breached any obligations for which they should be held liable to plaintiffs will be determined by judge-made rules. The consequences of any breach of duty imposed by the courts are necessarily also determined by the courts. *Cf. International Brotherhood of Electrical Workers v. Foust,* —— U.S. ——, ——, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (majority opinion), 2128 (Blackmun, J., concurring) (1979) (breach of union's duty of fair representation). The remedies appropriate for the violation of duties imposed under the federal common law of water pollution will necessarily depend upon the facts in a particular case. *E. g., Illinois v. Milwaukee, supra,* 599 F.2d at 175. We hold only that a request for damages does not preclude the exercise of jurisdiction of a claim arising under the federal common law of interstate water pollution.[34]

Accordingly, the district court had subject matter jurisdiction of plaintiffs' claim under the federal common law of interstate water pollution.[35]

---

**31.** *United States v. Ira S. Bushey & Sons,* 346 F.Supp. 145 (D.Vt.1972) (Oakes, J.), *aff'd,* 487 F.2d 1393 (2d Cir. 1973), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3182, 41 L.Ed.2d 1146 (1974); *United States v. Stoeco Homes,* 498 F.2d 597, 611 (3d Cir. 1974), *cert. denied,* 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975); *see also Stream Pollution Control Board v. United States Steel Corp.,* 512 F.2d 1036, 1040 n.9 (7th Cir. 1975); *United States v. United States Steel Corp.,* 356 F.Supp. 556, 558 (N.D.Ill.1973).

**32.** The sewer district seems to assert that the Supreme Court's decision in *Illinois v. Milwaukee, supra,* establishes a request for equitable relief as a "criterion" for maintaining a claim under the federal common law of interstate water pollution. We disagree. Plaintiffs in that case sought equitable relief because of the nature of the claimed injury. *See Illinois v. Milwaukee, supra,* 599 F.2d at 165. The Supreme Court's discussion of Illinois' right to maintain the action, therefore, focused on that type of claim. We find nothing in the opinion that supports the conclusion that equitable relief is exclusive or that a request for such relief is essential.

**33.** Nor is the relief sought ordinarily determinative of whether a plaintiff has a cause of action. "If a litigant is an appropriate party to invoke the power of the courts, it is said that he has a 'cause of action' under the statute, and that this cause of action is a necessary element of his

'claim.' So understood, the question whether a litigant has a 'cause of action' is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive." *Davis v. Passman,* —— U.S. ——, ——, 99 S.Ct. 2264, 2274, 60 L.Ed.2d 846 (1979).

**34.** Additional support for the conclusion we reach on this point may be found in the Supreme Court's references to the law of "public nuisance." *Illinois v. Milwaukee, supra,* 406 U.S. at 106, 107, 92 S.Ct. 1385; *see also Vermont v. New York,* 417 U.S. 270, 275 n.5, 94 S.Ct. 2248, 41 L.Ed.2d 61 (1974). For in such suits plaintiffs found to meet the "particular injury" requirements for maintaining a suit for public nuisance traditionally have been awarded damages or equitable relief depending upon the circumstances. *See generally* W. Prosser, Private Action for Public Nuisance, 52 Va.L.Rev. 997 (1966); W. Prosser, *Handbook of the Law of Torts* 602–606 (4th ed. 1971). "Once the existence of a nuisance is established, the plaintiff normally has three possible remedies: an action for the damages which he has suffered, equitable relief by injunction, and abatement by self help." *Id.* at 602.

**35.** We express no judgment on the extent to which the sewer district may have a sovereign immunity defense since neither party has adequately briefed the issue, both stating, in effect,

## V.

### Venue and Personal Jurisdiction

Since we should affirm a district court judgment on any ground supported by the record on appeal, our disposition of the federal common law claim would ordinarily lead us to consider any other substantial ground urged for affirmance.[36] Nevertheless, in this case we think it wise to defer consideration of the sewer district's contention that the Indiana long-arm statute,[37] applicable here by force of Rule 4(e), Fed.R. Civ.P.,[38] is insufficient to permit the exercise of personal jurisdiction, a contention the trial judge found it unnecessary to reach because of his holding on subject matter jurisdiction. If the issue were governed by Illinois law, our decision in *Illinois v. Milwaukee, supra,* 599 F.2d 151, sustaining

in personam jurisdiction, would be controlling. Indiana's long-arm statute is different from that of Illinois, however. The parties have cited no Indiana decision construing the relevant provisions of the statute, and our research has revealed none. Although federal district courts sitting in Indiana have stated that the "Indiana long-arm statute was intended to extend personal jurisdiction of courts sitting in this state, . . ., to the limits permitted under the due process clause of the fourteenth amendment," *Oddi v. Mariner-Denver, Inc.,* 461 F.Supp. 306, 308 (S.D.Ind.1978),[39] the specific statutory provisions appear to be more limited.

Subsection (2) of the Indiana long-arm statute refers to "an act or omission done within this state." We cannot determine whether the Indiana courts will conclude

---

that the question does not affect jurisdiction. *But cf. United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

**36.** The sewer district's improper venue claim is adequately answered by our decision in *Illinois v. Milwaukee, supra,* 599 F.2d at 156, rejecting a similar argument. *Leroy v. Great Western United Corp.,* —— U.S. ——, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), decided after our decision in *Illinois v. Milwaukee, supra,* does not require a contrary conclusion.

In *Great Western,* the Court noted that if it is "not clear that the claim arose in only one specific district a plaintiff may choose between those two . . . districts that with approximately equal plausibility . . . may be assigned as the locus of the claim." —— U.S. at ——, 99 S.Ct. at 2718. But in the case before it the Court found that there was "only one obvious locus . . .." *Ibid.* Interstate water pollution disputes, however, fall within the first category. *See Illinois v. Milwaukee, supra,* 406 U.S. at 108 n.10, 92 S.Ct. 1385; *Illinois v. Milwaukee, supra,* 599 F.2d at 156. For, in such disputes, proof of injury to the complainant is a significant aspect of the litigation. *See generally Illinois v. Milwaukee, supra,* 599 F.2d at 156. The defendant's actions will commonly occur in a district other than that in which the injury is suffered, but it cannot be said that the "bulk of the relevant evidence and witnesses," *Leroy v. Great Western, supra,* —— U.S. at ——, 99 S.Ct. at 2718, will be located in either district.

**37.** Trial Rule 4.4, Indiana Rules of Trial Procedure, reprinted in Ind.Stat.Ann.: Court Rules, Book 1 (Burns), in relevant part, is as follows:
(A) *Acts serving as a basis for jurisdiction.* Any person or organization that is a nonresi-

dent of this state, . . ., submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:
(1) doing any business in this state;
(2) causing personal injury or property damage by an act or omission done within this state;
(3) causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state; . . ..

**38.** *E. g., Illinois v. Milwaukee, supra,* 599 F.2d at 156 n.3; *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.,* 597 F.2d 596, 598 (7th Cir. 1979).

**39.** *Valdez v. Ford, Bacon, and Davis, Texas,* 62 F.R.D. 7, 10, 14 (N.D.Ind.1974); *Byrd v. Whitestone Publications, Inc.,* 27 Ind.Dec. 617, 619 (S.D.Ind.1971); *see also Pearson v. Furnco Construction Co.,* 563 F.2d 815, 819 (7th Cir. 1977). *But cf. Chulchian v. Franklin,* 392 F.Supp. 203, 205 (S.D.Ind.1975).

And it does seem that that was their intent: "The adoption of this rule will expand the in personam jurisdiction of the courts of this state to the limits permitted under the Due Process Clause of the Fourteenth Amendment." Civil Code Study Commission, Comments to Rule 4.4, quoted in *Valdez v. Ford, Bacon, supra,* 62 F.R.D. at 10. The Comments are reprinted in W. Harvey, 1 *Indiana Practice,* 298–305 (1969).

that this phrase includes only acts physically done within the state or also includes acts physically done outside the state but causing some injury within it; either construction is possible.[40] Subsection (3) of the Indiana statute suggests the narrower construction, since the broader construction would create considerable overlap between the provisions of subsections (2) and (3). Nevertheless, if it is correct that the legislature intended to expand Indiana state court jurisdiction to the limits of the due process clause, a broad construction may be warranted.[41] This issue of Indiana statutory law should be decided in the first instance by a district judge sitting in Indiana, who will be more familiar with Indiana law and practice than we are.[42]

## VI.

### State Law Claims

We affirm the district court's dismissal of the three state law claims. "[I]t is federal common law and not state statutory or common law that controls in this case," *Illinois v. Milwaukee, supra,* 599 F.2d at 177 n.53; *see Illinois v. Milwaukee, supra,* 406 U.S. at 103 & n.5, 107 & n.9, 92 S.Ct. 1385.[43]

Accordingly, the district court's judgment is affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**

---

**40.** The Indiana statute is based in part on the Illinois long-arm statute, Ill.Rev.Stat. ch. 110 § 17; the New York long-arm statute, 7B McKinney's Consolidated Laws of New York § 302, is also based in part on the Illinois statute. Yet, the courts of Illinois and New York have come to opposite conclusions concerning the scope of virtually identical phrases in their long-arm statutes. *Compare Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 435–436, 176 N.E.2d 761, 762–763 (1961) (construing the phrase "tortious act within this state") *with Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 460, 261 N.Y.S.2d 8, 21, 209 N.E.2d 68, 77, *cert. denied sub nom. Estwing Mfg. Co. v. Singer,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965) (construing the phrase "tortious act within the state"). *See also Harvey v. Chemie Grunenthal,* 354 F.2d 428, 431 (2d Cir.), *cert. denied,* 384 U.S. 1001, 86 S.Ct. 1923, 16 L.Ed.2d 1015 (1965) (construing the New York long-arm statute).

**41.** Also, it seems apparent that the three subsections were not intended to be mutually exclusive. All three might be applicable for example, in a products liability action against an Illinois manufacturer that has no place of business in Indiana but regularly sells its products there.

**42.** Only the sewer district presses this claim on appeal. The other defendants moved to dismiss the amended complaint "for improper venue and failure to comply with the provision[s] of . . . 28 U.S.Code 1391(a) and . . . 28 U.S.Code Section 1391(b) . . .," but in their memorandum in support of the motion seemed to argue in addition that the court had no personal jurisdiction, concluding with the following statement:

Plaintiffs have not, and cannot, allege facts sufficient to support venue or personal jurisdiction in this Court, and the . . . Complaint must be dismissed.

In responding to this motion to dismiss, however, plaintiffs only addressed the venue contention. If on remand these defendants do in fact raise the issue, the court should consider whether it has been preserved.

Whether or not these defendants have waived the objection by failure to raise it, Rule 54(b), Fed.R.Civ.P., and 28 U.S.C. § 1292(b) provide available avenues for review of the court's decision on the personal jurisdiction issue as it relates to the sewer district should the court make the requisite findings.

**43.** Although federal common law controls, federal statutes as well as state statutory and common law are nonetheless highly relevant. *Illinois v. Milwaukee, supra,* 406 U.S. at 103 & n.5, 107 & n.9, 92 S.Ct. 1385; *Illinois v. Milwaukee, supra,* 599 F.2d at 165–166; *cf. United States v. Kimbell Foods,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979); *see generally* Mishkin, The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision, 105 U.Pa.L.Rev. 797 (1957).