**SIERRA CLUB, Plaintiff,**

v.

**The HANNA FURNACE CORPORATION, Defendant.**

**No. CIV–82–1077E.**

United States District Court, W.D. New York.

Dec. 10, 1985.

---

Anthony Z. Roisman, Washington, D.C., for plaintiff.

John W. Rickers, Buffalo, N.Y., for defendant.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

Defendant has moved to dismiss this "citizen's suit" brought under 33 U.S.C. § 1365, section 505 of the Federal Water Pollution Control Act Amendments of 1972 ("the FWPCA"), for lack of subject matter jurisdiction and for failure to state a claim.

■ The alleged lack of jurisdiction is based upon plaintiff's asserted failure to notify the New York State Department of Environmental Conservation ("the DEC") of defendant's alleged violation of the FWPCA at least 60 days prior to commencing suit, as required by 33 U.S.C. § 1365(b)(1)(A). Defendant's contention is based upon the failure of the copy of plaintiff's notice-of-violation letter attached to the Complaint as Exhibit A to indicate on its face that it was sent to the DEC. However, paragraph three of the Complaint alleges that a copy was sent to the DEC September 17, 1982 and, as plaintiff points out, upon a motion to dismiss the well-pleaded allegations of the Complaint must be taken as true (*Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972)). Defendant has submitted no evidentiary material drawing into question the pertinent allegation; plaintiff has submitted an affidavit in support of its contention that service was effected. The motion to dismiss for lack of subject matter therefore lacks merit.

Defendant's assertion that the Complaint fails to state a claim upon which relief may be granted is based upon its assertion, supported by affidavits of appropriate officers of defendant, that it has ceased operations permanently and entirely as of January 30, 1982, effectively mooting plaintiff's demand for prospective injunctive relief.

Plaintiff opposes the mootness argument as to its demand for prospective relief essentially upon the grounds that defendant's intention not to recommence operations at the offending facility has not been shown to be immutable and irreversible, requiring a court order assuring that any future operations conform with applicable pollutant effluent standards. It was established in *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953), that voluntary cessation of illegal activity does not moot a controversy when "[t]he defendant is free to return to his old ways," as it would be imprudent "to grant defendants such a powerful weapon against public law enforcement." In the absence of convincing evidence that defendant *cannot* recommence operations, dismissal of the demand for injunctive relief is not warranted. Moreover, if defendant's representations are true it cannot conceivably be prejudiced by nondismissal of plaintiff's demand for injunctive relief, of which defendant might easily disencumber itself by stipulation to a consent decree. Defendant has submitted an affidavit describing the progress of the sale of the plant equipment and noting the inoperable condition of the plant. However, defendant has at most proven that recommencement of its operations would require a sizeable investment in new equipment. This is not yet that quantum of proof required to moot plaintiff's demand for injunctive relief.

In opposition to plaintiff's demand for imposition of the maximum penalty of $10,000 per day for its past alleged violations of applicable effluent standards, defendant urges that section 1365 does not authorize citizen suits for civil penalties for past violations when no present violations are occurring. Defendants rely principally upon dictum regarding 33 U.S.C. § 1365(a) in *City of Evansville, Ind. v. Ky. Liquid Recycling*, 604 F.2d 1008, 1014 (7th Cir. 1979):

> "That provision authorizes a civil action against a party 'alleged to be in violation' of effluent standards or limitations prescribed under the Act * * *. It does not provide for suits against parties alleged to have violated an effluent standard or limitation in the past * * *."[1]

With due respect to that court, this construction of section 1365(a) places unwarranted importance upon the tense of the verb stating the actionable conduct, inviting the danger that potential defendants will pollute with small fear of being penalized, secure in knowing that they can negate or minimize any penalty by halting pollution as soon as the activity is complained of. Hence defendant's interpretation would severely cripple the remedial purpose of the FWPCA. If defendant would limit its argument to shield those past polluters who are defunct at the time suit is brought, the evil would be invited that the potential polluter verging upon bankruptcy or shutdown for any reason would be tempted to disregard restrictive effluent controls, lured perhaps by an added incentive to maximize profits or reduce losses of an ailing business.

Also, this interpretation cannot be squared with other language of the pertinent provisions. Section 1365(a) provides that in a citizen's action the court may "apply any appropriate civil penalties under section 1319(d)." Section 1319(d) provides that "[a]ny person who *violates* stated sources of effluent pollution standards

---

1. The court went on to discuss the Act's legislative history in regard to class actions and actions for damages, language cited by defendant but not pertinent here. The civil penalties authorized by 33 U.S.C. §§ 1319(d) and 1365(a) are payable to the government and not in the nature of damages.

shall be subject to a civil penalty not to exceed $10,000 per day of such violation"; section 1319(d) does *not* state that any person "in violation of" the effluent standards shall be subject to a civil penalty. Applying section 1365(a) narrowly only to persons presently "in violation of" applicable effluent standards would be inconsistent with that section's authorization of "any appropriate" penalties provided for by section 1319(d).

In *Middlesex Cty. Sewerage Authority v. Sea Clammers*, 453 U.S. 1, 14, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981), the Court noted that the section 1319(d) provision has a counterpart in section 105(a) of the Marine Protection, Research and Sanctuaries Act of 1972, which like section 1319(d) prescribes penalties for "[a]ny person who violates" that Act and by its provision for alleviation of the penalty for "the demonstrated good faith of the person charged in attempting to achieve rapid compliance after notification of a violation" makes clear—if it were not already—that civil penalties are assessable for past violations. Similarly, section 311(b)(6) of the FWPCA itself, which provides for civil penalties for each discharge of oil or hazardous substance violative of section 311(b)(3), clearly authorizes the penalties for past conduct even where there is every appearance that the discharge will not be willfully repeated. *See, United States v. Ward*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). There exists no rational basis for more strictly limiting the availability of civil penalties under section 1319(d) and hence under section 1365(a). The fact that violations are likely or even certain never to reoccur is merely one factor among others which bears upon the proper amount of civil penalties to be imposed, if any.

In accord with the foregoing, defendant's motion to dismiss is hereby ORDERED denied.[2]

---

2. Defendants also had moved for a stay of discovery pending my decision upon its dismissal motion, a request mooted by this Order.