**CHESAPEAKE BAY VILLAGE, INC., Plaintiff,**

v.

**Douglas M. COSTLE, Administrator, United States Environmental Protection Agency et al., Defendants.**

Civ. A. No. M–79–1543.

United States District Court, D. Maryland.

Oct. 29, 1980.

---

4. Section 48903(h) cited *supra.*

5. The school district must still deal with the limitations imposed by § 48903(g).

J. Michael McWilliams, Tydings & Rosenberg, Baltimore, Md., and Warren K. Rich, Annapolis, Md., for plaintiff.

Russell T. Baker, Jr., U. S. Atty., and Edward M. Norton, Jr., Asst. U. S. Atty., Baltimore, Md., for Douglas M. Costle, Administrator, United States Environmental Protection Agency, and for Jack J. Schramm, Regional Administrator, United States Environmental Protection Agency–Region III.

Thomas G. Redman, Asst. County Sol., Anne Arundel County, Maryland, Annapolis, Md., and John Henry Lewin, Jr. and Sally Spencer Lazzara, Venable, Baetjer & Howard, Baltimore, Md., for Robert A. Pascal, individually and as County Executive, Anne Arundel County, Maryland, and Anne Arundel County.

Stephen H. Sachs, Atty. Gen. of Maryland, and Marc K. Cohen and Susan K. Gauvey, Asst. Attys. Gen., Baltimore, Md., for Charles R. Buck, Jr.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

Plaintiff Chesapeake Bay Village, Inc. (CBV), a land development corporation owning a large tract of land on the Mayo Peninsula in Anne Arundel County, Maryland, brought this suit for declaratory and injunctive relief against the following defendants: Douglas M. Costle,[1] as Adminis-

---

1. Plaintiff also seeks a Writ in the Nature of Mandamus, 28 U.S.C. § 1361, with respect to defendant Costle. (Amended Complaint, Paper No. 28, at 4).

trator of the United States Environmental Protection Agency (EPA); Jack Schramm, as Regional Administrator of Region III of the EPA (collectively referred to as the federal defendants); Robert A. Pascal, individually and as County Executive of Anne Arundel County, Maryland; Anne Arundel County, Maryland, (county defendants)[2]; and Charles R. Buck, Jr., as Secretary of the Maryland Department of Health and Mental Hygiene (state defendant).

By Order dated August 29, 1980, plaintiff was permitted to file an amended complaint (Paper No. 28) reiterating the allegations set forth in the original complaint and adding new allegations purporting to state a claim against defendant Pascal in his individual capacity. The state and county defendants have renewed their previous motions to dismiss (See Paper Nos. 12, 15, 33), and defendant Pascal, in his individual capacity, has filed a dismissal motion (Paper No. 31).[3]

### I. Nature of the Case

This case involves primarily the construction grant process for sewage treatment plants under the Federal Water Pollution Control Act Amendments of 1972 (FWPCA), 33 U.S.C. §§ 1281 to 1297. Plaintiff contends that the actions of the various defendants, allegedly improper un-

der the FWPCA, resulted in the federal government not awarding Anne Arundel County a grant for a sewage treatment plant large enough to meet the anticipated needs of the Mayo Peninsula.

The amended complaint alleges that plaintiff intends to develop its land on the Mayo Peninsula into a residential subdivision. To do so, plaintiff must comply with Anne Arundel County's subdivision requirements which among other things, mandate the procurement of special exceptions before final approval of the subdivision plat. These special exceptions, however, can be granted only if adequate sewage treatment facilities will exist for the proposed development area. At present, the Mayo Peninsula has insufficient waste water treatment capacity to serve the present population, much less to permit plaintiff to obtain the special exceptions necessary for its residential subdivision.[4] Moreover, it is disputed whether plaintiff can construct private sewage treatment facilities under the circumstances of this case.[5]

The original sewage treatment proposal for the Mayo Peninsula (Step I facilities plan), presented to the EPA by the state and county defendants in October, 1975, was for a two (2) million gallon per day (mgd) plant.[6] However, in January of 1977,

---

2. Plaintiff also seeks damages from the county defendants. (Amended Complaint, Paper No. 28, at 25).

3. On February 1, 1980, the Court held a hearing on the motions to dismiss filed by the state and county defendants against the original complaint. Since the parties have filed numerous memoranda on the issues to be decided, and the amended complaint does not alter significantly the nature of the lawsuit, further oral argument is unnecessary. See Local Rule 6(E).

4. As to the existence of serious deficiencies in the present sewage disposal systems on the Mayo Peninsula, see Order of Charles R. Buck, Jr., Secretary, Department of Health and Mental Hygiene, to Robert A. Pascal, Executive, Anne Arundel County, February 29, 1980.

5. Plaintiff contends that it is precluded by *Md. Ann.Code*, art. 43, § 387C(d)3 from constructing a facility serving only its development because the county has adopted a Water and Sewer plan for the entire area. (Paper No. 22).

Plaintiff further contends that individual septic systems cannot be used because of poor soils, high water tables, and a history of septic system failures. See COMAR 10.17.01.05. The state defendant asserts that *Md.Ann.Code*, art. 43, § 394 allows plaintiff to construct privately owned sewage facilities, although it admits that much of plaintiff's land cannot meet the health requirements for septic systems. (Paper No. 21).

6. In accordance with the then applicable federal regulations, the county authorized a series of consultant reports concerning the waste water facilities on the Mayo Peninsula. The first study, prepared by C. D. Messick, Jr. Associates in 1970 and revised in 1975, contained a cost effectiveness analysis and accounted for plaintiff's proposed residential development in its population projections. (Paper No. 15, at 2).

the EPA disapproved the proposal because it rejected the county's estimated population figures,[7] and advised the county that it would entertain a grant application only for a one mgd facility. Plaintiff also alleges that the EPA represented that the project would be subjected to a lengthy environmental impact statement (EIS) should the county seek a facility with a capacity larger than one mgd.[8]

Plaintiff next alleges that at the direction of the federal and state defendants, and in accordance with county instructions, the original consultant report was revised and reissued in May, 1977, as the "Mayo Wastewater System Comprehensive Plan."[9] Plaintiff contends that this plan wrongfully "deleted the anticipated population in Plaintiff's zone," (Amended Complaint, Paper No. 28, at ¶ 25), and that its population projections are at variance with the appropriate Section 208, 33 U.S.C. § 1288, Section 303(e), 33 U.S.C. § 1313(e), and County Master Water and Sewer plans.[10]

Based on the revised study, the state and county defendants submitted a grant application for a one mgd facility. Although on September 22, 1977, the federal defendants offered a grant for the construction of a one mgd facility, plaintiff alleges that defendant Anne Arundel County, at the express direction of defendant Pascal, rejected the offer and decided to delay the project "for reasons extraneous to the grant process." (Amended Complaint, Paper No. 28, at ¶ 28).

It appears from the facts alleged that the federal grant process concerning the one mgd facility is still not completed, and that further cost effectiveness studies are being conducted. Additionally, plaintiff asserts that because of the delay involved with these studies, the federal defendants have informed the state and county defendants that a completely revised Step I study is necessary under revised EPA regulations effective April 1, 1980. See 40 C.F.R. § 35.917(c).

## II. Defendants' General Objections

Before engaging in a count–by–count analysis of the amended complaint to determine whether plaintiff has asserted claims for which relief can be granted, the court will address various general grounds for dismissal urged by defendants.

The state defendant contends that this case should be dismissed for lack of a party needed for just adjudication. See Rule 19, F.R.Civ.P. The state defendant asserts that the Maryland Department of Natural Resources is a "necessary" party because it has been designated by the governor as the state water planning agency and is partly responsible for developing section 208 and section 303(e) plans. See Md. Ann.Code, Natural Resources Article, §§ 3–

7. The population estimates used in the county's first Step I facilities plan were derived from the Messick Study, see note 6 supra, undertaken to comply with the FWPCA's planning requirements. The FWPCA mandates two plans relevant to this litigation: Section 208, 33 U.S.C. § 1288 and Section 303(e), 33 U.S.C. § 1313(e). The Section 208 and Section 303(e) planning process is linked to the construction grant program by Sections 203, 204 and 208 of the FWPCA, 33 U.S.C. §§ 1283, 1284, 1288. See W. Rogers, Environmental Law §§ 4.9, 4.10 (1977).

8. Plaintiff contends that the prerequisites for an EIS are absent from this case, and that EPA's "threat" of imposing such a requirement constituted an illegal attempt to control local land use and development. (Amended Complaint, Paper No. 28, at ¶ 24).

9. See Paper No. 15.

10. According to the 1977 report:

"Population figures presented in this report are not in conformance with current population projections shown in the 1977 Anne Arundel County Master Plan for Water Supply and Sewage Systems. The population figures shown in the Master Plan were obtained from the Anne Arundel County Department of Planning and Zoning. These figures reflect anticipated growth in the Mayo Peninsula including a proposed high density development in the Triton–Beverly Beach Area. The figures, when submitted to the Environmental Protection Agency, were rejected. Thus, the figures shown in this report represent the population projections which the Environmental Protection Agency has indicated will be acceptable."

Paper No. 15, at 8.

106, 8–1404, 8–1405. Since the Department of Natural Resources does appear to be a party in whose absence "complete relief cannot be accorded among those already parties," and its joinder will not deprive the court of subject matter jurisdiction, it shall be made a party defendant.

The state defendant next contends that plaintiff lacks standing to bring this action and that plaintiff's claims are not ripe for adjudication.[11] The modern standing requirements were discussed recently by Chief Justice Burger in *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). The Chief Justice commented:

> "The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' *Baker v. Carr*, 369 U.S. 186, 204 [82 S.Ct. 691, 703, 7 L.Ed.2d 663] (1962). As refined by subsequent reformulation, this requirement of a 'personal stake' has come to be understood to require not only a 'distinct and palpable injury', to the plaintiff, *Warth v. Seldon [Seldin]*, 422 U.S. 490, 501 [95 S.Ct. 2197, 2206, 45 L.Ed.2d 343] (1975), but also a 'fairly traceable' causal connection between the claimed injury and the challenged conduct. *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 261 [97 S.Ct. 555, 561, 50 L.Ed.2d 450] (1977)."

438 U.S. at 72, 98 S.Ct. at 2630.

Additionally, a plaintiff must show "an injury to itself that is likely to be redressed by a favorable decision." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976).

■ Assuming the truth of CBV's factual allegations for the purpose of these mo-

tions, it is apparent that it has standing to maintain this action. CBV alleges that the defendants have violated the FWPCA's construction grant provisions, and that the direct result of these violations has been to deprive indefinitely the Mayo Peninsula of an adequate sewage treatment facility. CBV further alleges that the landowners of Mayo Peninsula were legally entitled to have received the federal grant issued in their behalf. CBV asserts direct harm to itself because without sewage facilities it allegedly cannot develop or use its property. A favorable decision could alleviate at least one of the injuries complained of; that is, the alleged indefinite delay in the federal grant process. That such relief would not guarantee CBV success in its development plans does not prevent their having standing to maintain this action. *See Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 261–62, 97 S.Ct. 555, 561–62, 50 L.Ed.2d 450 (1977).

The state's ripeness challenge is also without merit. Plaintiff is seeking relief primarily in connection with alleged violations of the FWPCA construction grant provisions. The acts complained of have already occurred, and future events would not add significantly to the availability of operative facts needed for a determination of the parties' dispute. *See Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). Moreover, prudential considerations embodied in the ripeness doctrine militate in favor of a prompt resolution of plaintiff's claims.

The county's contention that plaintiff has no claim under 42 U.S.C. § 1983 because county *employees* are responsible for actually producing the plans at issue does not merit discussion. Plaintiff is not suing the county defendants under a *respondeat superior* theory. *See Monell v. New York City Department of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978).

---

11. The state and county defendants also contend that this court should abstain from deciding plaintiff's state law claims. In light of the court's decision regarding the exercise of pendent jurisdiction, it is unnecessary to reach the abstention issue.

■ Defendant Pascal, in his individual capacity, has moved to dismiss the amended complaint on the ground that it violates the requirements of Rule 8(a)(2), F.R.Civ.P., in not presenting facts sufficient to give him notice of the basis of plaintiff's claim. Although the allegations in the amended complaint with respect to defendant Pascal in his individual capacity are somewhat general, they are sufficient to withstand a motion to dismiss on Rule 8 grounds. Fact pleading is not required under the Federal Rules, and the court finds that plaintiff's allegations afford defendant Pascal "fair notice of what the claim is and the ground upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).[12]

■ Defendant Pascal has also moved to dismiss on the ground that plaintiff's attorney violated Rule 11 in amending the complaint to include allegations concerning him in his individual capacity. The court finds the assertions in defendant Pascal's memorandum (Paper No. 31) wholly conclusory and insufficient to support a motion to dismiss under Rule 11.

### III. Count–By–Count Analysis

#### A. Count I

Count I of the amended complaint alleges that the defendants have violated various provisions of the construction grant program of the FWPCA, 33 U.S.C. §§ 1281 to 1297. Plaintiff contends that the federal and state defendants violated federal law by arbitrarily disapproving, or failing to approve, the county's Step I facilities plan for a two (2) mgd project. This facilities plan was based on the population projections set forth in the applicable section 208, section 303(e), and county master plan for water and sewage systems. Plaintiff further contends that the federal defendants acted illegally in disapproving the first Step I facilities plan because the alleged reason for the disapproval was the federal defendants' "no–growth" policy rather than a reason related to the grant process.

Plaintiff also contends that the county defendants violated federal law by revising and resubmitting the Step I facilities plan, and then applying for a Step III construction grant, based on population projections at variance with the section 208, section 303(e), and county master water and sewage plans. The county defendants are further charged with deleting accurate population projections from the second facilities plan in order to prevent plaintiff from developing its property on the Mayo Peninsula into a residential subdivision.

Plaintiff asserts that this court has jurisdiction to review the actions of the federal, state, and county defendants under 28 U.S.C. § 1331(a) because their actions are said to arise "under color of the FWPCA's planning and construction grant program." Thus, plaintiff maintains that its claims arise under federal law and jurisdiction is present under the general federal question statute. Plaintiff does not rely on section 505(a), the FWPCA's citizen suit provision, 33 U.S.C. § 1365(a), as a basis for this court exercising jurisdiction over their claims.

The state and county defendants contend that this court does not have jurisdiction over plaintiff's alleged FWPCA claims, under either the FWPCA's citizen suit provision or 28 U.S.C. § 1331(a). They also contend that even if jurisdiction is present, plaintiff has not asserted claims for which relief may be granted; that is, defendants maintain that plaintiff has no federally created rights under the construction grant provisions of the FWPCA. Therefore, defendants assert that plaintiff does not have a cause of action against them, even assuming that their actions violated the statute or the applicable regulations.

■ It should be noted initially that the issue of whether this court has subject matter jurisdiction is separate and distinct from the issue of whether plaintiff has stated a claim for which relief can be granted. *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773,

---

12. Defendants have also moved, pursuant to Rule 12(e), F.R.C.P. for a more definite statement. Since the court finds that the amended complaint is not so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, that motion will be denied.

776, 90 L.Ed. 939 (1946). A complaint may allege violations of rights "arising under" federal law sufficient for the court to assume jurisdiction, but at the same time fail to state a cognizable claim. If this is the case, the court "should take jurisdiction to decide the merits of the controversy, so long as the questions raised are not frivolous on their face." *Donohoe Construction Co., Inc. v. Montgomery County Council,* 567 F.2d 603, 607 (4th Cir. 1977), *cert. denied,* 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1148 (1978). Here, the court cannot say that plaintiff's FWPCA claims are "so patently without merit as to justify . . . the court's dismissal for want of jurisdiction." *Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. at 70, 98 S.Ct. at 2629, *quoting Hagans v. Lavine,* 415 U.S. 528, 542–43, 94 S.Ct. 1372, 1381–1382, 39 L.Ed.2d 577 (1974). *See Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666–67, 94 S.Ct. 772, 776–77, 39 L.Ed.2d 73 (1974). Thus, if plaintiff's suit is to be dismissed at all, it must be for failure to state a claim rather than for lack of subject matter jurisdiction.

The construction grant provisions of the FWPCA do not expressly create rights in private citizens. The only rights expressly created by the FWPCA are set forth in section 505(a), 33 U.S.C. § 1365(a), which provides:

"(a) Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator

or a State with respect to such a standard or limitation, or

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title."

This section, therefore, both creates specific "causes of action" in favor of private citizens and confers subject matter jurisdiction in the district courts to adjudicate these claims.[13]

The claims asserted by CBV against the state and county defendants are not within the "causes of action" created by section 505(a), 33 U.S.C. § 1365(a). Moreover, while the "savings clause" contained in section 505(e), 33 U.S.C. § 1365(e), preserves whatever rights a person may have "under any statute or common law," it does not itself create any rights. *City of Evansville v. Kentucky Liquid Recycling,* 604 F.2d 1008, 1014 (7th Cir. 1979), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 689, 62 L.Ed.2d 689 (1980); *Natural Resources Defense Council, Inc. v. Train,* 510 F.2d 692, 700–02 (D.C.Cir. 1975).

Plaintiff cites no particular section of the construction grant provisions of the FWPCA in support of its contention that it has rights under the statute. In fact, plaintiff asserts that whether or not it has a private cause of action under the FWPCA is immaterial. Plaintiff views this suit simply

---

**13.** Three courts of appeals have held that district courts have jurisdiction to review claims "arising under" the FWPCA through 28 U.S.C. § 1331(a) by operation of the "savings clause" contained in section 505(e), 33 U.S.C. § 1365(e). *See National Sea Clammers Association v. City of New York,* 616 F.2d 1222, 1225–28 (3rd Cir.), *cert. granted* —— U.S. ——, 101 S.Ct. 314, 65 L.Ed.2d 145 (1980); *Natural Resources Defense*

*Council, Inc. v. Callaway,* 524 F.2d 79, 83–89 (2nd Cir. 1975); *Natural Resources Defense Council v. Train,* 510 F.2d 692, 698–702 (D.C. Cir.1975). The latter two cases do not aid plaintiff because the issue in each was whether the court had subject matter jurisdiction, not whether the particular plaintiff has a cause of action under the FWPCA.

as one seeking "judicial review" of governmental actions. The court disagrees. If Congress neither expressly nor impliedly granted persons such as plaintiff rights under the construction grant provisions of the FWPCA, then plaintiff has no basis for challenging defendants' actions. In other words, without legally cognizable rights, plaintiff cannot state a valid claim against defendants, much less seek judicially imposed remedies. Therefore, before CBV can be said to have stated a claim for which relief can be granted against the state and county defendants, the court must find that the construction grant provisions of the FWPCA create an implied cause of action in favor of private citizens.

The question whether a private cause of action may be implied from a statute has been addressed by the Supreme Court in several recent cases. *See Transamerica Mortgage Advisors v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). These cases have refined the analysis set forth in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), for determining whether private rights exist under any given statute.[14]

It is now well established that "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. University of Chicago*, 441 U.S. at 688, 99 S.Ct. at 1953. Moreover, although the factors identified in *Cort* remain relevant to the inquiry,

"the Court did not decide that each of these factors is entitled to equal weight. *The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action.* Indeed, the first three factors discussed in *Cort*–the language and focus of the statute, its legislative history, and its purpose, see 422 U.S., at 78, 95 S.Ct., at 2088–are ones traditionally relied upon in determining legislative intent."

*Touche Ross & Co. v. Redington*, 442 U.S. at 575–76, 99 S.Ct. at 2489 (emphasis supplied).

Additionally, once congressional intent is discerned, the other considerations identified in *Cort* that might favor implying a cause of action become irrelevant. *Transamerica Mortgage Advisors v. Lewis*, 444 U.S. at 23–24, 100 S.Ct. at 249.

Two courts of appeals have addressed the issue of whether a private plaintiff has under the FWPCA an implied cause of action or, in other words, enforceable rights independent from those established in section 505(a), 33 U.S.C. § 1365(a). The Seventh Circuit, in *City of Evansville v. Kentucky Liquid Recycling*, 604 F.2d 1008 (7th Cir. 1979), answered in the negative.[15] In that case, three municipal corporations that used water from the Ohio River brought suit against defendants who were allegedly discharging toxic chemicals into the river. Plaintiffs alleged that they incurred unusual treatment expenses as a result of the discharges and sought damages.

The FWPCA provision at issue, section 301, 33 U.S.C. § 1311, proscribes the discharge of any pollutant except in compli-

---

**14.** In *Cort*, the following factors were identified as relevant to the implied cause of action inquiry:

"In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the

underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law."
422 U.S. at 78, 95 S.Ct. at 2086 (citations omitted) (emphasis in original).

**15.** The court also held that there was no implied private cause of action under section 13 of the Rivers and Harbors Act, 33 U.S.C. § 407.

ance with certain of the FWPCA's provisions. Section 301's legislative history is silent as to private causes of action. In holding that section 301 did not impliedly create a private cause of action, the court found that section 505(a) "evidences a congressional intent to carefully channel public participation in the enforcement of the Act." 604 F.2d at 1015 (footnote omitted). According to the Seventh Circuit, therefore, implying a private remedy for damages under section 301 "would be inconsistent with the congressional purpose implicit in the Act of encouraging private participation . . . within the channels expressly provided." 604 F.2d at 1016.

The Third Circuit reached a contrary result in *National Sea Clammers Association v. City of New York*, 616 F.2d 1222 (3rd Cir. 1980), *cert. granted*, —— U.S. ——, 101 S.Ct. 314, 66 L.Ed.2d 145 (1980). In that case, the plaintiff was an association whose members made their living harvesting fish and shellfish from the Atlantic Ocean. The defendants were various federal, state, and local officials responsible for environmental protection or sewage treatment and disposal. The plaintiff alleged that defendants discharged or permitted the discharge of certain sewage that harmed marine life, and sought injunctive relief, damages, and a writ of mandamus.

The Third Circuit began its analysis by distinguishing between two classes of plaintiffs granted access to the courts under the FWPCA. According to the court, the first class is comprised of private attorneys general, *noninjured* members of the public who were given a cause of action under section 505(a). 616 F.2d at 1227. The court based this conclusion on the legislative history's reference to *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636, (1972), and the differences between the original Senate and House bills on citizen suits. 604 F.2d at 1226-27 nn.6 & 7. *See* S.Conf. Rep.No. 1236, 92nd Congress, 2nd Sess. *reprinted* in [1972] U.S.Code Cong. & Ad. News 3776, 3822-23.

The second class of plaintiffs are private parties who were *injured* by FWPCA viola-

tions. Their rights to enforce the FWPCA are "preserved" by section 505(e), according to the Third Circuit Panel, and they are not obligated to meet the notice requirements of section 505(b). 604 F.2d at 1227-28.

Applying the *Cort* factors and finding that one of the purposes of the FWPCA was to protect individuals from the injurious effects of water pollution (particularly that on marine life, *see* 33 U.S.C. § 1251(a)(2)), the *Sea Clammers* court held that the class of persons *injured* by violations of the FWPCA constituted a "class for whose *especial* benefit the statute was enacted." 604 F.2d at 1229 (emphasis in original). The court also viewed the section 505(e) savings clause as an indication of Congress' intent not to preclude an implied private cause of action under the FWPCA. 604 F.2d at 1230. Relying on *Cannon v. University of Chicago*, 441 U.S. at 703, 99 S.Ct. at 1961, the court next found that implying a cause of action on behalf of those injured would be "helpful" in effectuating the FWPCA's purposes. 604 F.2d at 1230. Finally, the court noted that water pollution of the Atlantic Ocean was not the traditional concern of the states, and thus concepts of federalism would not militate against implying a private cause of action. 604 F.2d at 1230.

■ After carefully reviewing the construction grant provisions of the FWPCA, and their legislative history, the court holds that no cause of action may be implied in favor of CBV under the facts presented in this case. In reaching this conclusion the court respectfully declines to adopt either the narrow approach of the Seventh Circuit, or the overly expansive reasoning employed by the Third Circuit. The court finds the Seventh Circuit's approach too narrow because it focuses almost exclusively on section 505(a). The path chosen by the Third Circuit is overbroad because it would apparently grant a private cause of action to any "injured" party who could satisfy the requirements of standing.

In any event, *National Sea Clammers*, is distinguishable from the controversy presented in this case. Here, plaintiff's al-

leged injury is quite attenuated, because the challenge in count I goes to the failure of the defendants to secure a federal grant for a sewage treatment facility. In *National Sea Clammers*, the plaintiff suffered direct injury from defendants' alleged violations of federal discharge standards. Moreover, the defendants in that case were under a positive legal duty to prevent injurious discharges.

The question whether CBV has a private cause of action under the facts alleged here is essentially one of statutory construction. *Touche Ross & Co. v. Redington*, 442 U.S. at 568, 99 S.Ct. at 2485; *Cannon v. University of Chicago*, 441 U.S. at 688, 99 S.Ct. at 1953. The court's inquiry, therefore, must focus upon that part of the statute under which plaintiff claims to have rights. Although statutes must, of course, be construed as a whole, it would be illogical to focus upon those provisions of the FWPCA having nothing to do with plaintiff's claims.

The declared congressional purpose underlying the FWPCA's construction grant provisions is "to require and to assist the development and implementation of waste treatment management plans and practices which will achieve the goals of this chapter." 33 U.S.C. § 1281(a). The goal referred to is the controlling and abatement of water pollution. *Train v. City of New York*, 420 U.S. 35, 37, 95 S.Ct. 839, 841, 43 L.Ed.2d 1 (1975). The entities to be assisted, however, are the states and its localities. *See* S.Rep.No. 414, 92nd Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Ad. News 3668, 3690–3708; S.Conf.Rep.No. 1236, 92nd Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Ad.News, 3776, 3786–96. Although certain sections of the construction grant provisions do impose affirmative obligations on the states and their designated agencies, *see, e. g.*, 33 U.S.C. § 1288 (planning); 33 U.S.C. § 1296 (designation of priorities), "whether Congress intended additionally that these provisions be

enforced through private litigation is a different question." *Transamerica Mortgage Advisors v. Lewis*, 444 U.S. at 18, 100 S.Ct. at 246.

The legislative history of the construction grant provisions of the FWPCA is silent as to private enforcement.[16] While this does not negate conclusively the existence of an implied cause of action, *Cannon v. University of Chicago*, 441 U.S. at 694, 99 S.Ct. at 1956, it does weigh against finding an intent to create additional private rights, since Congress evidently knew how to provide expressly for private causes of action when it enacted section 505(a). *See Touche Ross & Co. v. Redington*, 442 U.S. at 572, 99 S.Ct. at 2487. Further, unlike those situations in which the Supreme Court has held that Congress intended to create implied statutory causes of action, *see, e. g., Cannon v. University of Chicago, supra,* (20 U.S.C. § 1681); *Allen v. State Board of Elections*, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969) (42 U.S.C. § 1973c); *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (15 U.S.C. § 78n(a)), the statutory provisions at issue here neither confer rights on private parties nor proscribe any conduct as unlawful. *See Touche Ross & Co. v. Redington*, 442 U.S. at 569, 99 S.Ct. at 2485. It is apparent, moreover, that the construction grant provisions were enacted to benefit the public at large, rather than some "especial" class of potential plaintiffs. *See Cannon v. University of Chicago*, 441 U.S. at 689–90, 99 S.Ct. at 1953–1954.

Thus, the court finds that there is no reasonable basis in the language, of the FWPCA's construction grant provisions, or their legislative history, to support a finding that Congress intended to confer a private cause of action in favor of private parties such as CBV. Although CBV might have rights under some other statute or common law rule, the court holds that it has

---

**16.** Section 309 of the FWPCA, 33 U.S.C. § 1319, authorizes the Administrator of the EPA to bring a civil action against persons in violation of Title III's effluent limitations. Section 505(h) of the FWPCA, 33 U.S.C. § 1365(h),

authorizes the governor of a state to bring a civil action against the Administrator when the Administrator fails to enforce Title III's effluent limitations.

no private cause of action under the construction grant provisions of the FWPCA. The inquiry, therefore, is necessarily at an end.[17] *Transamerica Mortgage Advisors v. Lewis*, 444 U.S. at 23–24, 100 S.Ct. at 249; *Touche Ross & Co. v. Redington*, 442 U.S. at 575–76, 99 S.Ct. at 2489.

█ In the event of a finding that CBV did not have cognizable claims against the state and county defendants under the FWPCA, CBV has urged this court to exercise a form of "pendent jurisdiction" over the nonfederal defendants, relying on *Arlington Coalition on Transportation v. Volpe*, 458 F.2d 1323 (4th Cir.), *cert. denied*, 409 U.S. 1000, 93 S.Ct. 312, 34 L.Ed.2d 261 (1972). In that case the Fourth Circuit enjoined state officials from condemning property in connection with Interstate Highway project No. 66 in Northern Virginia. This was found necessary in order to enforce an injunction against the federal defendants commanding the suspension of highway construction and compliance with the statutory requirement of preparing an EIS. The reason for the Fourth Circuit's exercise of this form of jurisdiction over the state officials was "based upon necessity rather than convenience and [was] limited to preventing the emasculation of the remedy clearly available against the federal defendants." 458 F.2d at 1329.

Plaintiff has not demonstrated that it is *necessary* to join the state and county defendants in count I in order for this court to enforce any relief that might be mandated against the federal defendants under that count. Further, the court has serious doubts as to whether there exists under count I a "remedy clearly available against the federal defendants." These factors make the exercise of the "pendent jurisdiction" referred to in *Arlington Coalition* inappropriate.

For the reasons stated above, CBV's claims under count I against all non–federal defendants will be dismissed.[18]

### B. Count II

Count II of the amended complaint asserts a cause of action under the Fifth Amendment against the federal defendants, and one under the Fourteenth Amendment against the state and county defendants.[19] Plaintiff alleges that the defendants' actions in connection with the proposed sewage facility for the Mayo Peninsula have denied plaintiff procedural due process, substantive due process, and equal protection of the laws. Plaintiff further alleges that defendants' actions have resulted in a *de facto* taking of property without just compensation.

### (a) Procedural Due Process

█ Plaintiff contends that defendants have denied it "timely notice and other procedural due process rights" in connection with the sewage facility decision–making process (Amended Complaint, Paper No. 28, at ¶ 37). To be entitled to such rights, plaintiff must first demonstrate that it has some property interest or other right entitling it to procedural guarantees. *Board of Regents v. Roth*, 408 U.S. 564, 570–571, 92 S.Ct. 2701, 2705–2706, 33 L.Ed.2d 548 (1972). Although plaintiff may have a great monetary interest respecting the size and timing of construction of the sewage facility, this does not mean that plaintiff has an interest

---

17. That CBV seeks primarily declaratory relief under count I, rather than money damages, does not change the result in this case. The Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, neither extends the basis of federal jurisdiction nor creates new rights. It simply enlarges the range of remedies available in federal courts to protect rights derived from other sources. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–74, 70 S.Ct. 876, 878–80, 94 L.Ed. 1194 (1950).

18. Since the federal defendants did not join in the state and county defendants dismissal motions, the court expresses no opinion as to whether CBV has stated a claim against them.

19. Plaintiff's allegations under Count II against the county defendants are cognizable, if at all, only under 42 U.S.C. § 1983. A cause of action may not be asserted against a municipality directly under the Fourteenth Amendment. *See Turpin v. Mailet*, 591 F.2d 426, 427 (2nd Cir. 1979) (en banc); *Cale v. City of Covington*, 586 F.2d 311, 313 (4th Cir. 1978).

entitled to procedural due process protections.

To have a "property interest" that is protected by the due process clause, plaintiff "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Nevertheless, plaintiff has cited neither statutory nor judicial authority that would indicate it has a recognized property interest in the approval of a specific sewage treatment facility, or even such an interest in new sewage facilities in general. *See generally United Land Development Corp. of America v. Clarke*, 613 F.2d 497, 501 (4th Cir. 1980).

Plaintiff's procedural due process claim against the state and county defendants, therefore, will be dismissed.

*(b) Substantive Due Process/Equal Protection*

Plaintiff alleges that the defendants' actions respecting sewage facilities for the Mayo Peninsula were "arbitrary and capricious" and have denied plaintiff "equal access to planned public facilities." (Amended Complaint, Paper No. 28, at ¶ 38). In essence, the state and county defendants are charged with an unreasonable exercise of the police power.

Absent an infringement of a "fundamental right" or the use of a "suspect classification," the rational basis test is the proper standard of review for both substantive due process and equal protection challenges to governmental action. Plaintiff's claims involve only economic rights, and since they are based on the same set of facts, they may be joined together for the purpose of analysis. *Wincamp Partnership v. Anne Arundel County*, 458 F.Supp. 1009, 1025 n.16 (D.Md.1978).

Under the rational basis test, the state and county defendants may not exercise their authority in an arbitrary, capricious, or unreasonable manner. To be sustained, their exercise of authority must be shown to bear a rational relationship to a legitimate governmental objective. *See Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 314–16, 96 S.Ct. 2562, 2567–68, 49 L.Ed.2d 520 (1976) (equal protection); *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 594–96, 82 S.Ct. 987, 990–91, 8 L.Ed.2d 130 (1962) (substantive due process).

In this case, plaintiff contends that the state and county defendants used, or permitted the use of, grossly inaccurate population projections in connection with proposals submitted to the federal defendants. The alleged purpose behind the submission was to deny CBV access to adequate sewage facilities for its proposed development. Plaintiff also alleges that the state and county defendants plan to condemn plaintiff's land for a public park, and purposefully delayed the building of sewage treatment facilities on the Mayo Peninsula in order to lower the value of plaintiff's land. Assuming the truth of all the facts alleged in the amended complaint, the court cannot dismiss plaintiff's substantive due process and equal protection claims. Plaintiff has stated a cognizable claim, at least for declaratory and injunctive relief, against the state and county defendants. *See generally Wincamp Partnership v. Anne Arundel County*, 458 F.Supp. at 1025–30.

*(c) Taking Without Just Compensation*

Plaintiff alleges that the defendants have prevented it "from developing and utilizing its property for the past five years, and will prevent the beneficial use of Plaintiff's property in the future." (Amended Complaint, Paper No. 28, at ¶ 39). Plaintiff contends, therefore, that there has been a *de facto* taking entitling it to just compensation.

In order to state a claim for a *de facto* taking under the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, a plaintiff must show that the state's interference with his property has effectively "deprive[d] 'the owner of all or most of his

interest' in the property." *Donohoe Construction Co. v. Montgomery County Council,* 567 F.2d at 608 n.13, *quoting United States v. General Motors Corp.,* 323 U.S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed. 311 (1945). In other words, "there is no [*de facto*] taking in the constitutional sense unless the interference is so substantial as to render the property worthless or useless." *Kent Island Joint Venture v. Smith,* 452 F.Supp. 455, 460 (D.Md.1978).

■ The complaint, when read as a whole, makes it apparent that the gist of plaintiff's claim is that the defendants' actions respecting the sewage facilities have prevented plaintiff from developing its Mayo Peninsula property into a residential subdivision. However, the fact that a person is unable to make the most desirable or profitable use of its property does not mean that there has been a taking. *See e. g., Goldblatt v. Town of Hempstead,* 369 U.S. at 594, 82 S.Ct. at 990; *United States v. Central Eureka Mining Co.,* 357 U.S. 155, 168, 78 S.Ct. 1097, 1104, 2 L.Ed.2d 1228 (1958).

■ Moreover, as Chief Judge Northrop explained in *Smoke Rise, Inc. v. Washington Suburban Sanitary Commission,* 400 F.Supp. 1369 (D.Md.1975), there is an important constitutional distinction between allegations of an unreasonable exercise of the police power and the exercise of the eminent domain power. In broad terms, a state is said to use its police power when it attempts to prevent a public harm. In contrast, a state is said to use its eminent domain power when it attempts to create a public benefit. 400 F.Supp. at 1381–83. Here, plaintiff has not alleged that the state and county defendants have "taken" its property to secure a public benefit. This sort of governmental action, or inaction as the case may be, cannot be transformed into a constructive taking. Plaintiff's "taking without just compensation" claim under count II, therefore, will be dismissed.

### C. Count III

Count III of the amended complaint sets forth a state law claim of equitable estoppel against the county defendants. Plaintiff alleges that these defendants had continually assured it that the necessary public sewage facilities would be in place by the time of plaintiff's hearing on a special exception. Plaintiff further alleges that these defendants have prevented it from pursuing certain special exceptions, and that it would be unjust to allow them to refuse to extend their approval of the previously approved site plan.

■ It is well settled in Maryland that, in an appropriate case, equitable estoppel may be asserted against the state or a municipality for acts done in a proprietary capacity. *See e. g., Salsbury Beauty Schools v. State Board of Cosmetologists,* 268 Md. 32, 63, 300 A.2d 367 (1972); *Mayor and City Council of Baltimore v. Chesapeake Marine Ry. Co.,* 233 Md. 559, 578, 197 A.2d 821 (1963); *Berwyn Heights v. Rogers,* 228 Md. 271, 279, 179 A.2d 712 (1962). To recover upon such a claim, plaintiff must show that the county defendants, by their words or conduct, misled plaintiff and that plaintiff detrimentally changed its position in reliance upon the misrepresentations. *See e. g., Chertkof v. Philadelphia, B & W R. Co.,* 254 Md. 557, 570, 255 A.2d 14 (1969); *Savonis v. Burke,* 241 Md. 316, 319–20, 216 A.2d 521 (1966). Additionally, plaintiff must establish that the alleged misrepresentations were made by persons having the authority to make representations as well as to bind the county to them. *See e. g., City of Hagerstown v. Long Meadow Shopping Center,* 264 Md. 481, 494–96, 287 A.2d 242 (1972); *Gontrum v. Mayor and City Council of Baltimore,* 182 Md. 370, 375–77, 35 A.2d 128 (1943).

■ At this stage of the case, the court cannot say that plaintiff could prove no set of facts entitling it to invoke the doctrine of equitable estoppel against defendant Anne Arundel County and defendant Pascal in his official capacity. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). However, to the extent that count III purports to state a claim against defendant Pascal in his individual

capacity, that claim must be dismissed. Since estoppel will lie against the county only for Pascal's acts that were within the scope of his authority as County Executive, then the county cannot be estopped as to any *ultra vires* acts that Pascal may have committed.

 Although there is no independent basis of federal jurisdiction for plaintiff's estoppel claim, the court will exercise pendent jurisdiction because it appears that this claim is derived from the same "nucleus of operative facts" as are plaintiff's substantive due process, equal protection and 42 U.S.C. § 1983 claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

### D. Count IV

Count IV of the amended complaint alleges a cause of action for damages, pursuant to 42 U.S.C. § 1983, against the state defendant, the county defendants, and defendant Pascal in his individual capacity. Plaintiff has conceded,[20] however, that under *Monell v. New York Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its predecessors, the state defendant in his official capacity is not a "person" within the meaning of section 1983. The court construes this concession as plaintiff's consenting to the state defendant's motion to dismiss count IV. Therefore, only the county defendants remain under this count.

For the reasons set forth in the court's discussion of plaintiff's substantive due process and equal protection claims under count II, the county defendants' motion to dismiss count IV will be denied.

### E. Count V

Count V of the amended complaint alleges that the state defendant, Charles R.

Buck, Jr., Secretary of the Maryland Department of Health and Mental Hygiene, wrongfully failed to order the construction of adequate public sewage treatment facilities, although allegedly required to do so by Maryland law.[21]

Under *Md.Ann.Code* art. 43, § 393, the Secretary is empowered to order a municipality to construct sewage treatment facilities upon a finding that the absence of such facilities is causing, or is likely to cause, water pollution that is dangerous to health or a nuisance.[22] Similarly, under *Md.Ann. Code* art. 43, § 388, the Secretary is authorized to order the alteration, extension, or replacement of public sewage facilities when necessary to protect the public health. Plaintiff contends that the failure to defendant Buck to act under these statutes constitutes a "gross abuse of discretion," and that the hazardous conditions allegedly permitted to continue by defendant Buck's inaction have interfered unreasonably with plaintiff's use of its property. (Amended Complaint, Paper No. 28, at ¶¶ 61, 64).

Plaintiff also charges the county defendants with failing to "prevent, abate, and remove nuisances," purportedly in violation of *Md.Ann.Code* art. 25A, § 5J. (Amended Complaint, Paper No. 28, at ¶ 65).

Several difficulties exist with respect to the allegations against defendant Buck under count V. First, there is a substantial question as to whether there is a private cause of action directly under either section 393 or section 388. Although *Md.Ann.Code* art. 43, § 404, grants a "cause of action" with respect to any order issued by the Secretary under the provisions of the subtitle, it is apparent from the language of section 404 that it was intended to provide for judicial review of an affirmative order. In other words, section 404 does not provide an avenue of relief when the Secretary has

---

**20.** Paper No. 17, at 15 n.4.

**21.** On February 29, 1980, defendant Buck issued an Order to defendant Pascal pursuant to *Md.Ann.Code* art. 43, § 393, instructing him to construct adequate sewage treatment facilities, on the Mayo Peninsula. *See* note 4 *supra*. Plaintiff has not amended its complaint to as-

sert a claim against the county defendants for failing to comply with this order.

**22.** All the powers of the State Board of Health conferred by section 393 are now exercised by the Secretary of Health and Mental Hygiene. *Md.Code Ann.* art. 43, § 1(H).

failed to act. In any event, section 404 provides for an appeal to the state circuit courts, and not to this court.

Judge Kaufman's decision in *Wincamp Partnership v. Anne Arundel County*, 458 F.Supp. at 1020–23, assumed that a cause of action existed but dismissed the plaintiff's claims upon a factual determination that no health hazard or nuisance existed. A review of the motions to dismiss filed in that case reveals that the issue of the right of a private party to sue was never raised. Further, this court is aware of no Maryland case other than *Wincamp Partnership*, and the parties have not cited any, in which a private party sued for relief under section 393. Judge Northrop's opinion in *Smoke Rise, Inc.*, discussed section 388, but did so in the context of an affirmative sewer moratorium order.

Thus, plaintiff's allegations against defendant Buck involves substantial questions of state law for which there is no controlling precedent relating to whether a private cause of action exists under section 393 or section 388. A similar question exists with respect to plaintiff's allegations, pursuant to *Md.Ann.Code* art. 25A, § 5J, against the county defendants. Although that section authorizes the county to "prevent, abate, and remove nuisances," it does not appear to grant private citizens a right to sue the county when it fails to take action under that section.

In order for this court to consider count V, it must exercise pendent jurisdiction. It appears, however, that the factual basis of plaintiff's state laws claims under count V is totally independent from that underlying its federal claims. If this is indeed the case, then the court is without power to hear them. *United Mine Workers v. Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138; *Hales v. Winn–Dixie Stores, Inc.*, 500 F.2d 836, 847–48 (4th Cir. 1974). *See also Bowman v. White*, 388 F.2d 756, 760–61 (4th Cir.), *cert. denied*, 393 U.S. 891, 89 S.Ct. 214, 21 L.Ed.2d 172 (1968).

 Even assuming, however, that plaintiff's state law claims under count V are sufficiently related to its federal claims,

the exercise of pendent jurisdiction is discretionary. *Mayor v. Philadelphia Equality League*, 415 U.S. 605, 627, 94 S.Ct. 1323, 1336, 39 L.Ed.2d 630 (1974); *Webb v. Bladen*, 480 F.2d 306, 309 (4th Cir. 1973). In light of the problems presented by plaintiff's claims under this count, the court will heed Justice Brennan's admonition that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer–footed reading of the applicable law," *United Mine Workers v. Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139, and dismiss this count, without prejudice.

### F. Count VI

This count alleges a *de facto* taking without just compensation. It will be dismissed as to the state and county defendants for the reasons set forth in the court's discussion of plaintiff's taking claim under count II.

### G. Count VII

Like count III, count VII is premised on a theory of equitable estoppel. This count, however, purports to assert an estoppel against all of the defendants for it states: "Acting in good faith and in reasonable reliance upon representations made by *the Defendants* as set forth above, plaintiff expended large amounts of money in pursuance of its plans to develop the Chesapeake Bay Village." (Amended Complaint, Paper No. 28, at ¶ 71) (emphasis supplied).

Although the court harbors great doubts as to whether plaintiff will be able to show ultimately that misrepresentations were made by governmental officials within the scope of their authority, at this stage of the case the court must assume the truth of all plaintiff's factual allegations. Therefore, the motions to dismiss will be denied as to count VII.

Accordingly, it is this 29th day of October 1980, *ORDERED*:

1. The motion to dismiss of the state defendant is GRANTED as to Count I, the procedural due process and taking without

just compensation claims under Count II, Count IV, Count V and Count VI.

2. The motion to dismiss of the state defendant is DENIED as to the substantive due process and equal protection claims under Count II, Count III, and Count VII.

3. The motion to dismiss of the county defendants is GRANTED as to Count I, the procedural due process and taking without just compensation claims under Count II, Count III to the extent that it purports to state a claim against defendant Pascal in his individual capacity, Count V, and Count VI.

4. The motion to dismiss of the county defendants is DENIED as to the substantive due process and equal protection claims under Count II, and Count III to the extent that it purports to state a claim against Anne Arundel County and defendant Pascal in his official capacity, Count IV and Count VII.

5. To the extent that the state and county defendants, including defendant Pascal in his individual capacity, have moved to dismiss for other reasons discussed in this Memorandum and Order, those motions are DENIED.

6. The Maryland Department of Natural Resources shall be joined as a party defendant.